Ex parte KING (four cases).

(District Court, N. D. Georgia. November 2, 1912.)

1. HABEAS CORPUS (§ 59*)—RIGHT TO WRIT—APPLICATION—DETERMINATION ON MERITS.

Right of a petitioner to a writ of habeas corpus may be determined on the merits on a hearing on the application.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 55; Dec. Dig. § 59.*]

2. POST OFFICE (§ 35*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—STATUTES.

The essential elements of the offense denounced by Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), prohibiting the use of the mails with intent to further a scheme to defraud, are that the persons charged must have devised a scheme to defraud; that they must have intended to effect such scheme by opening correspondence with some other person through the post office, or to incite such other person to open communication with them; and that, in carrying out such scheme, the persons accused must either have deposited a letter or package in the post office, or taken or received one therefrom. But Cr. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]) denounces a broader offense than section 5480; it being only necessary to a conviction for violating section 215 that the scheme to defraud was devised, or intended to be devised, and subsequently a letter placed in the post office for the purpose of executing such scheme or artifice, or attempting to do so—it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

being unnecessary that the scheme or device contemplated the use of the post office establishment.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

3. CONSPIRACY (§ 43*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—INDICTMENT.

An indictment for conspiracy to use the post office establishment in furtherance of a scheme to defraud alleged that defendant and certain others conspired and devised a scheme to defraud divers persons to the grand jury unknown, to be effected through and by means of the post office establishment, which scheme and artifice to defraud was then described to consist of an arrangement by which defendants, through a corporation, intended to purchase lumber through the post office establishment from manufacturers, with intent not to pay for the same, and in carrying out such scheme deposited a letter in the post office, which was set out, etc. *Held*, that such indictment sufficiently charged that the carrying out of the scheme contemplated the use of the post office establishment; and therefore charged a conspiracy to commit the offense denounced by Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), prohibiting the use of the post office establishment in furtherance of a scheme to defraud, etc.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 81–99; Dec. Dig. § 43.*]

4. INDICTMENT AND INFORMATION (§ 119*)—SURPLUSAGE—DESIGNATION OF STATUTE.

Where an indictment charged a conspiracy to use the post office establishment in furtherance of a scheme to defraud, in violation of Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), it was not fatally defective because it alleged that the use of the post office establishment was in violation of Cr. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), which was not in force at the time the offense was committed.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 311–314; Dec. Dig. § 119.*]

Application by John King for a writ of habeas corpus. Embraced herewith are the applications of Fred King, Ike King, and Jewel King. Denied.

Burton Smith, of Atlanta, Ga., for petitioners.

John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for the United States.

NEWMAN, District Judge. This is an application for writ of habeas corpus by John King, who is confined in the United States penitentiary at Atlanta, Ga. The application is based upon the ground that the indictment to which the petitioner entered a plea of guilty was absolutely void, and that no legal conviction could be had or sentence passed thereon.

The petition, which will show the facts in the case, may be properly set out in full, as follows:

"And now comes John King, and respectfully shows to this honorable court the following facts:

"Petitioner is confined in the federal prison at Atlanta; that his confinement results from and is based upon an indictment, plea, and sentence of

---

the United States District Court for the Northern District of Mississippi, Western Division. Copy of said indictment, entries thereon, plea, and sentence are as follows:

" 'The grand jurors of the United States, impaneled, sworn, and charged at the term aforesaid, of the court aforesaid, on their oath present that Fred King, Ike King, Jewel King, and John King, on or about the 1st day of November, in the year 1909, and prior to said day and date, in the said division of the said district, and within the jurisdiction of said court, did then and there unlawfully, feloniously, and knowingly conspire, combine, confederate, and agree together to commit the acts made an offense and crime by section 215 of the Criminal Code of the United States; that is to say, the said persons aforesaid, and each of them, did then and there conspire, combine, confederate, and agree together in devising and intending to devise a certain scheme and artifice to defraud divers persons to the grand jurors unknown, to be effected through and by means of the post office establishment of the United States, which said scheme and artifice to defraud was as follows, to wit:   That the said Fred King, Ike King, Jewel King, and John King, associated and banded themselves together as a corporation, duly and legally incorporated under the laws of the state of Mississippi, dealing principally in lumber. under the style and corporate name of King Hardware & Lumber Co., domiciled at New Albany, county of Union, in said state, division and district aforesaid; and as such dealers in lumber, the said Fred King, Ike King, Jewel King and John King, acting and doing business under the corporate name of King Hardware & Lumber Company, as aforesaid, would, for the purpose of obtaining possession of lumber under contracts to buy the same in the open market in car load lots f. o. b. place of purchase, through and by means of the use of the post office establishment of the said United States, and fraudulently contracting to pay for the same a stated price per thousand feet, without the expectation or intention of paying for the same, according to the terms and tenor of said contracts of purchase, as aforesaid, and without paying for the same, and with the intent and design on the part of the said Fred King, Ike King, Jewel King and John King to procure the said lumber in the manner and method, as aforesaid, and to dispose of the same for cash, without regard to the real or the market value of the same, and at a price less than the amount contracted to be paid for the same, as aforesaid, with the purpose and intent on the part of the said Fred King, Ike King, Jewel King and John King, and each of them, to obtain money for said lumber and thereby to defraud the aforesaid lumber manufacturers, enter into such fraudulent contracts, as aforesaid; and that in pursuance to the carrying out of the said scheme and artifice to defraud, as aforesaid, the said Fred King, Ike King, Jewel King and John King, doing business under the style and corporate name of King Hardware & Lumber Co., as aforesaid, did, on or about the 19th day of October, A. D. 1909, deposit, or cause to be deposited, in a post office of the United States, to be conveyed by mail, which post office is to your grand jurors unknown, and for that reason cannot be set out in this indictment, an envelope addressed to one J. W. Burleson, Guin, Ala., which said envelope contained a letter in words and figures as follows, to wit:

" ' "New Albany, Miss., 10/19/09.

" ' "J. W. Burleson, Guin, Ala.—Dear Sir: Replying to yours of the 16th inst., relative to the car of boards, beg to say we can give you $11.25 for same f. o. b. cars if you can load at once. Awaiting your early reply, we are,        Yours truly,        King Hardware & Lumber Company.
" ' "Dict. J. WK-A."

" 'By means of and through the said representations contained in said letter as aforesaid, the said J. W. Burleson and O. H. Williams, composing the copartnership firm of Burleson & Williams, lumber manufacturers of Guin, Alabama, were thereby induced to deliver to the St. Louis & San Francisco Railroad Company at Guin, Alabama, a car load of pine lumber, which was loaded in car P. R. R. #11130, consigned to the King Hardware & Lumber Company, New Albany, Miss., which said corporation was composed, as aforesaid, of Fred King, Ike King, Jewel King and John King, and which

car of lumber, as aforesaid, was duly delivered in course of transportation to the said Fred King, Ike King, Jewel King and John King, and upon coming into possession of the said car of lumber, they, the said Fred King, Ike King, Jewel King and John King, immediately sold the same to one M. C. Simpson of Holly Springs, Mississippi, at and for the consideration of $10.00 per thousand feet, receiving from the said M. C. Simpson, as aforesaid, payment for same on delivery in the sum of $143.80, and after acting and doing the things as aforesaid, and in pursuance of the said scheme and artifice aforesaid, refused to pay the said Burleson & Williams, lumber manufacturers, as aforesaid, anything for the said lumber, as aforesaid, and as they fraudulently contracted so to do; and thereby the said Fred King, Ike King, Jewel King and John King, composing the corporate firm of King Hardware & Lumber Co., as aforesaid, did defraud the said Burleson & Williams, lumber manufacturers, as aforesaid, of the sum of $161.77; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.        W. D. Frazee, United States Attorney.'

"Indorsed as follows:

" 'No. 5189. District Court of the United States for the Western Division of the Northern District of Mississippi. The United States v. Fred King et al. Indictment. Use of Mails to Defraud, Violation of Sec. 215 of the Criminal Code of the United States. A true bill. D. I. Sultan, Foreman, Filed Dec. 8, '10. L. E. Oldham, Clerk.'

" 'Tuesday, Dec. 5, 1911.

" 'This day came the District Attorney on the part of the United States, and the defendant, in proper person, into open court; and the said defendant, being arraigned on the indictment against him, pleaded guilty as charged, and submitted himself to the mercy of the court. It is thereupon ordered that judgment in this cause be and the same is hereby suspended until the first day of the next term of this court, to wit, June term, 1912, and that the defendants be held under the bonds heretofore filed and of record in this cause.'

" 'Monday, June 3, A. D. 1912.

" 'The defendants in this cause, to wit, Fred King, Ike King, Jewel King and John King, having entered their pleas of guilty as charged in the indictment against them at a former term of the court, the December term, A. D. 1911, on the 5th day of December, 1911, and submitted themselves to the mercy of the court; and on the said day, December 5, 1911, the court ordered that judgment in this cause be suspended until the first day of the June term, 1912, of the court; it is now thereupon considered by the court that the said defendant Fred King, now present in court, pay his proper share of the costs of the prosecution of this cause, for which let execution issue, and that he, the said Fred King, be confined in the United States penitentiary at Atlanta, state of Georgia, for a term of two (2) years from date of delivery, for which let mittimus issue accordingly.

" 'It is further considered by the court that the said defendant Ike King, now present in court, pay his proper share of the costs of the prosecution of this cause, for which let execution issue, and that he, the said Ike King, be confined in the United States penitentiary at Atlanta, state of Georgia, for a term of two (2) years from date of delivery, for which let mittimus issue accordingly.

" 'It is further considered by the court that the said defendant Jewel King, now present in court, pay his proper share of the costs of the prosecution of this cause, for which let execution issue, and that he, the said Jewel King, be confined in the United States penitentiary at Atlanta, state of Georgia, for a term of two (2) years from date of delivery, for which let mittimus issue accordingly.

" 'It is further considered by the court that the said defendant John King, now present in court, pay his proper share of the costs of the prosecution of this cause, for which let execution issue, and that he, the said John King, be confined for a term of two (2) years in the United States penitentiary at Atlanta, state of Georgia, from date of delivery, for which let mittimus issue accordingly.'

200 F.—40

"Petitioner shows that, believing the court had intended to sentence him as for violating section 5480, and that therefore the excess of his sentence over and above 18 months was invalid, even if any sentence were valid, he submitted this contention to the Department of Justice. Had the Department of Justice sustained this view, petitioner would have been entitled to apply for parole within 6 months; and, as he felt sure that all of the facts and circumstances surrounding his business life, and the indorsements he was able to submit to the parole board, would have assured him a parole immediately, this would have contented him. As the Department, however, held that he was sentenced for conspiracy, and as he has been advised the indictment is absolutely void, and the sentence a nullity, he presents this petition to this honorable court.

"Petitioner further shows, as evidence that he was indicted under section 215, the fact that two other indictments were found against him, same being numbers 5199 and 5200; said indictments being found at the same time, and being in the same words and phrases as the indictment herein set forth, except each of them refers to a different purchase.

"Petitioner further shows that the judge in sentencing him stated he could give him the full five years.

"He respectively shows to this court that he was indicted for conspiring to violate section 215 of the Criminal Code, and that at the time the offense is alleged to have been committed this section was not in force, and the indictment is therefore void. He therefore prays this honorable court to issue a writ of habeas corpus, directed to William H. Moyer, warden of the federal prison, requiring petitioner to be brought before this court and discharged from custody."

The contention for the petitioner, as will be seen, is that the offense which he was charged as conspiring to commit was committed on November 1, 1909; that he was indicted on December 8, 1910; and that the indictment charges a conspiracy, under section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), to commit the offense named in section 215 of the new Penal Code, which did not go into effect until January 1, 1910; and the further contention being that the conspiracy with which King was charged was to commit an offense under the new Penal Code, which went into effect after the conspiracy was formed and executed. The conspiracy part of the charge cuts little figure in the question now made; it is the offense which the conspiracy was formed to commit.

[1] Counsel for the petitioner and the Assistant United States Attorney have argued the merits of this matter upon the application for the issuance of the writ. There is no difficulty about this, as the rights of the petitioner are to be determined by a construction of this indictment and a determination of its validity, or invalidity, and whether the petitioner could have been legally convicted and sentenced thereon.

[2] This offense having been committed November 1, 1909, it is first necessary to consider whether the indictment charges an offense under the law as it existed at that time. The law on November 1, 1909, was embodied in section 5480 of the Revised Statutes (U. S. Comp. St. 1901, p. 3696). That statute is as follows:

"If any person having devised or intending to devise any scheme or artifice to defraud, or to sell, dispose of, loan, exchange, alter, give away, or distribute, supply, or furnish, or procure for unlawful use any counterfeit or spurious coin, bank notes, paper money, or any obligation or security of the United States or of any state, territory, municipality, company, corporation, or person, or anything represented to be or intimated or held out to be such counterfeit or spurious article, or any scheme or artifice to obtain money by

or through correspondence, by what is commonly called the 'sawdust swindle.' or 'counterfeit money fraud,' or by dealing or pretending to deal in what is commonly called 'green articles,' 'green coin,' 'bills,' 'paper goods,' 'spurious treasury notes,' 'United States goods,' 'green cigars,' or any other name or term intended to be understood as relating to such counterfeit or spurious articles, to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the post office establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement in any post office, branch post office, or street or hotel letter-box of the United States, to be sent or delivered by the said post office establishment, or shall take or receive any such therefrom, such person so misusing the post office establishment shall, upon conviction, be punishable by a fine of not more than five hundred dollars and by imprisonment for not more than eighteen months, or by both such punishments, at the discretion of the court. The indictment, information, or complaint may severally charge offenses to the number of three when committed within the same six calendar months; but the court thereupon shall give a single sentence and shall proportion the punishment especially to the degree in which the abuse of the post office establishment enters as an instrument into such fraudulent scheme and device."

The essential elements of an offense under section 5480 of the Revised Statutes, it will be seen, was that the persons charged in the indictment must have devised a scheme or artifice to defraud; and, second, that they must have intended to effect this scheme by opening or intending to open correspondence with some other person through the post office establishment, or incite such other person to open communication with them; and, third, that in carrying out such scheme such persons must either have deposited a letter or package in the post office, or taken or received one therefrom.

Section 215 of the new Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. 1911, p. 1653]) is as follows:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, bank note, paper money, or any obligation or security of the United States, or of any state, territory, municipality, company, corporation, or person, or anything represented to be or intimated or held out to be such counterfeit or spurious article, or any scheme or artifice to obtain money by or through correspondence, by what is commonly called the 'saw dust swindle.' or 'counterfeit money fraud,' or by dealing or pretending to deal in what is commonly called 'green articles,' 'green coin,' 'green goods,' 'bills,' 'paper goods,' 'spurious treasury notes,' 'United States goods,' 'green cigars,' or any other names or terms intended to be understood as relating to such counterfeit or spurious articles, shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, whether addressed to any person residing within or outside the United States, in any post office, or station thereof, or street or other letter-box of the United States, or authorized depository of mail matter, to be sent or delivered by the post office establishment of the United States, or shall take or receive any such therefrom, whether mailed within or without the United States, or shall knowingly cause to be delivered by mail according to the direction thereof, or at the place at which it is directed to be deliv-

ered by the person to whom it is addressed, any such letter, postal card, package, writing, circular, pamphlet, or advertisement, shall be fined not more than one thousand dollars, or imprisoned not more than five years, or both."

This is broader, as will be seen, than the old law, in that it is only necessary that the scheme to defraud should be devised, or intended to be devised, and a letter placed in the post office "for the purpose of executing such scheme or artifice or attempting so to do." The essential difference between the two statutes is that under the former the scheme or artifice must have contemplated the use of the post office establishment of the United States, and in the latter the scheme or artifice is devised, or intended to be devised, and subsequently the letter placed in the post office for the purpose of executing the scheme; that is, under the first it is necessary that it should be contemplated as a part of the scheme or artifice that the post office establishment should be used, and under the second and present law it is only necessary that the person devise a scheme to defraud, and afterwards place, or cause to be placed, a letter, etc., in the post office for the purpose of executing the same.

It seems to me it is necessary to consider, first, whether this indictment charges an offense under the old law, and, next, whether the fact that it is stated in the indictment that it is based on section 215 of the new Penal Code has the effect of rendering the indictment void, provided it does state an offense under the old law in existence at the time the offense was committed.

[3] I think this indictment charges sufficiently an offense under the old law. The language material at this point is as follows:

"That is to say, the said persons aforesaid, and each of them, did then and there conspire, combine, confederate, and agree together in devising and intending to devise a certain scheme and artifice to defraud divers persons to the grand jurors unknown, to be effected through and by means of the post office establishment of the United States."

It then proceeds:

"Which said scheme and artifice to defraud was as follows, to wit: That the said Fred King, Ike King, Jewel King, and John King, associated and banded themselves together as a corporation, duly and legally incorporated under the laws of the state of Mississippi, dealing principally in lumber, under the style and corporate name of King Hardware & Lumber Co., domiciled at New Albany, county of Union, in said state, division and district aforesaid; and as such dealers in lumber, the said Fred King, Ike King, Jewel King and John King, acting and doing business under the corporate name of King Hardware & Lumber Company, as aforesaid, would, for the purpose of obtaining possession of lumber under contracts to buy the same in the open market in car load lots f. o. b. place of purchase, through and by means of the use of the post office establishment of the United States," etc.

That is, that they entered into a conspiracy or artifice to defraud by using the post office establishment, and then that in carrying the same out, through and by means of the use of the post office establishment of the United States, did do the acts subsequently charged, and it then charges that they deposited, or caused to be deposited, a letter in the post office, which letter is set out.

[4] It is perfectly clear that, if the expression "by section 215 of the Criminal Code of the United States" had been left out, a complete offense would have been charged under section 5480 of the Revised Statutes, in effect at the time this offense was committed.

Is the fact that it is stated in the indictment that it is based on section 215 of the Criminal Code sufficient to render the indictment void? It is wholly unnecessary to have stated under what law the indictment was found in the body of the indictment, or even on the back of the indictment (as is customary in this district), if a complete offense under any penal statute of the United States is set out in the indictment.

It must be held, therefore, that the use of this language in the indictment, and this reference to section 215 of the new penal Code, was mere surplusage and wholly insufficient to void the indictment. Indeed, it seems very doubtful whether it would have been sufficient to render the indictment bad as against a demurrer entered before plea. Certainly the indictment without this would have been a good indictment as against a demurrer; and this being, as stated, mere surplusage, it is still doubtful whether, with this in, it would not have been upheld as against a demurrer. Clearly, after a plea of guilty to the indictment, which would have as much effect, at least, as a verdict of guilty, without objection to the indictment, it cannot be held void.

The case of Ex parte Bain, 121 U. S. 1, 13, 7 Sup. Ct. 781, 787 (30 L. Ed. 849), is cited as authority by counsel for petitioner in this case. In the Bain Case the Circuit Court allowed the indictment against Bain to be amended by striking out certain words contained therein, and after this was done there was a demurrer, which was overruled, and after conviction a motion in arrest of judgment, which was overruled; and the Supreme Court put its decision in that case upon the ground that there was no authority to mend an indictment of a grand jury, and said this:

"It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizens, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisites of an indictment, in reality no longer exists. It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the Constitution, can be 'held to answer,' he is then entitled to be discharged, so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a nolle

prosequi had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence. The case comes within the principles laid down by this court in Ex parte Lange, 18 Wall. 163 [21 L. Ed. 872], Ex parte Parks, 93 U. S. 18 [23 L. Ed. 787], Ex parte Wilson, 114 U. S. 417 [5 Sup. Ct. 935, 29 L. Ed. 89], and other cases."

I do not see that that case has any application to this case.

Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667, is cited as showing the necessity for charging the intention to use the post office establishment of the United States in the original scheme. This is fully recognized, and the original intention to use the post office establishment of the United States is clearly set out in the indictment now before the court.

The case of United States v. Goodwin (C. C.) 20 Fed. 237, is also earnestly urged as authority in favor of the petitioner in this case. As I understand that case, I do not so regard it. Section 343 of the new Judicial Code provides that:

"All offenses committed, and all penalties, forfeitures, or liabilities incurred prior to the taking effect hereof, under any law embraced in, or changed, modified, or repealed by this title, may be prosecuted and punished in the same manner and with the same effect as if this act had not been passed."

In my opinion, the only serious question in this case is the use of the expression in the indictment that the offense which the conspiracy was formed to commit comes under section 215 of the new Judicial Code. It unquestionably constituted an offense under this statute in the new Judicial Code, and I think it also stated an offense under the law for which the section of the new Penal Code was substituted; and in charging the offense which the conspiracy was formed to commit it charges an offense under the old section 5480 of the Revised Statutes.

It being clear that if a writ of habeas corpus should issue no relief could be granted the petitioner thereunder, it is ordered that the application for the writ be, and the same is, hereby denied.

It is noted that this hearing also embraced the applications, exactly the same in each case, of Fred King, Ike King, and Jewel King.