## SUGAR v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.   July 10, 1918.)

No. 3175.

1. INDICTMENT AND INFORMATION ⬳125(5½)—JOINDER OF TWO OFFENSES.

Indictment charging that defendants conspired to commit an offense against and to defraud the United States in violation of Pen. Code, § 37 (Comp. St. 1916, § 10201), and to unlawfully and willfully aid and counsel unknown persons to refuse to register under the Selective Draft Act, did not charge two distinct defenses, no facts being alleged to show a conspiracy to defraud the United States, so that the allegation as to fraud was surplusage.

2. CRIMINAL LAW ⬳1032(5)—ERROR—RESERVATION OF EXCEPTIONS.

The objection that the language of the indictment is indefinite, uncertain, and ambiguous is not available on writ of error, where no such objection was made in the court below, since it does not then appear that accused was prejudiced.

3. INDICTMENT AND INFORMATION ⬳108—REFERENCE TO STATUTORY SECTION.

Indictment charging that defendants conspired to interfere with registration under Selective Draft Act May 18, 1917, § 5, by publication of newspaper counseling persons not to register, sufficiently charged a public offense, notwithstanding section 6 of the Selective Draft Act was also the basis of the offense charged, the act and not the sections being important, in view of Rev. St. U. S. § 1025 (Comp. St. 1916, § 1691), preventing indictments from being deemed insufficient unless the defect tends to the prejudice of defendant.

4. CRIMINAL LAW ⬳970(5)—MOTION TO ARREST JUDGMENT—PRINCIPALS—INTERFERENCE WITH SELECTIVE DRAFT.

On motion to arrest judgment notwithstanding plea of guilty, Cr. Code § 332 (Comp. St. 1916, § 10506), providing that whoever aids, counsels, or procures the commission of an act is a principal, has no effect favorable to one indicted jointly with others for conspiracy in violation of Pen. Code, § 37 (Comp. St. 1916, § 10201), to obstruct registration under the Selective Draft Act May 18, 1917.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Maurice Sugar and others were indicted for conspiracy to unlawfully and willfully aid and abet and procure persons to violate the Conscription Act. Sugar moved to quash the indictment, and the motion was denied (243 Fed. 423); whereupon he demurred to the indictment, and the demurrer was overruled, and he entered plea of guilty, was sentenced, and moved in arrest of judgment, and the motion was denied, and he brings error.   Judgment affirmed.

Seymour Stedman, of Chicago, Ill., and Willis G. Clarke, of Detroit, Mich., for plaintiff in error.

John E. Kinnane, U. S. Atty., of Detroit, Mich., for the United States.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARRINGTON and KNAPPEN, Circuit Judges, and WALTER EVANS, District Judge.

EVANS, District Judge. The indictment charges that on the 26th day of May, 1917, and on divers other days subsequently thereto, up to and including the 31st day of May, 1917, at the city of Detroit, Mich., Nathan L. Welch, Maurice Sugar, Samuel N. Diamond, Ludwig Bolz, Robert Westfall, Daniel L. Powell, Jr., and other persons unknown to the grand jury, did conspire, confederate, and agree together to commit an offense against the United States, and to defraud the United States, in violation of section 37 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. 1916, § 10201]) of the United States, in this, that they and each of them did then and there unlawfully conspire, confederate, and agree together among themselves, and with other persons unknown, to unlawfully and willfully aid and abet, counsel, induce, and procure, certain male persons, whose names are to the grand jurors unknown, and being male persons between the ages of 21 years and 30 years, both inclusive, who are subject to registration under the terms and provisions of section 5 of an act of Congress approved May 18, 1917, c. 15, 40 Stat. 80, entitled "An act to authorize the President to increase temporarily the military establishment of the United States," and in accordance with the regulations prescribed by the President under said act, and at the time and place designated in the proclamation made, issued, and promulgated by the President under said act; to willfully fail and refuse to present themselves for registration at the time and place and in the manner provided in said act and said regulations, proclamation, and public notice, and to unlawfully evade the requirements of said act in not registering at the time and place and in the manner provided by the said act and regulation, proclamation, and public notice. It further charged that in pursuance of said conspiracy, and to effect the object thereof, said Nathan L. Welch, said Maurice Sugar, said Samuel N. Diamond, said Ludwig Bolz, said Robert Westfall, and said Daniel L. Powell, Jr., and each of them, on the 27th day of May, A. D. 1917, at the city of Detroit, Mich., did unlawfully, willfully, and knowingly print, publish, issue, and circulate, and cause to be printed, published, issued, and circulated, certain literature in opposition to the operation and enforcement of the aforesaid act of Congress and proclamation and regulation promulgated for the enforcement of said law, said literature consisting of a certain issue of a weekly newspaper printed and circulated in said city of Detroit, and know as the Michigan Socialist, and said issue of said newspaper being the issue dated as follows, to wit, "Detroit, Mich., Sunday, May 27, 1917," and being known as the "Anti-Conscription Edition" thereof, the heading of said issue of said newspaper so printed and published and circulated in said city of Detroit being in the words and figures following, to wit, together with the resolution adopted by the Socialist Party of Detroit, appearing on the first page of said newspaper:

ANTI-CONSCRIPTION EDITION
THE MICHIGAN SOCIALIST
Published by the Socialist Party of Detroit
VOL. 1　　　Detroit, Mich., Sunday, May 27, 1917.　　　No. 46

WHAT SOCIALISTS WILL DO ON REGISTRATION DAY

*Resolution Adopted by the Socialist Party of Detroit*

The government of the United States, in the interest of the capitalist class, has now plunged this country into the mad orgy of death and destruction which is convulsing the nations of the old world, and has forced conscription upon the people of this country.

We, the Socialist party of Detroit, in joint meeting assembled, reaffirm our allegiance to the principle of international working class solidarity, reiterate our unalterable opposition to this war, and denounce the law just passed to conscript the workers into military service.

This law forces into "involuntary servitude" a portion of the population of the country, and we brand it as a violation of the spirit of the thirteenth amendment to the constitution.

In the name of the workers, who will bleed but not benefit, we pledge ourselves to oppose registration for conscription by refusing to enroll upon registration day, and we call upon all workers to refrain from signifying their willingness to kill the workers of any other nation.

Better the freedom of a prison cell than slavery in the interest of commercialism.

And said issue of said newspaper, consisting of four pages of printed matter, then and there containing certain articles, editorials, and illustrations opposing the enforcement of the aforesaid act of Congress providing for the temporary increase of the military establishment of the United States, and known as the Selective Service Act, and inciting those subject to the operation of said act to willfully fail and refuse to present themselves for registration or to submit thereto as provided in said act, and in the regulations and the President's proclamation pertaining thereto, and exhorting said young men subject to said registration and draft to oppose and refuse to register, and particularly inciting and urging all such young men to violate said law and to oppose the enforcement of the same, as shown in the leading article printed and published in the first column of the first page of said issue, said leading article being in the words and figures following, to wit:

"WILL YOU CRINGE LIKE A COWARD OR STAND UP LIKE A MAN?

Will you follow sheeplike the plutocratic interests sponsoring this war to the European slaughter house to be butchered and maimed so that plutocracy may coin profits out of the misery of the war stricken nations?

Have you any backbone at all?

Will you permit military authorities to draft you into involuntary servitude, in contempt of real American tradition?

Will you stand by with your hands folded and permit the assassination of the constitutional rights of American citizens?

The hour is at hand when you must either act like a man or forever relinquish your civil and moral right.

War was declared by the President and Congress in the same arbitrary manner that the Kaiser declared it. You were not consulted about it.

A draft law has been passed over the protests of American workers. Registration is but a few hours ahead.

252 F.—6

Will you register your willingness to rot in the trenches to accommodate our American plutocracy?

What will you do?

You must choose and decide quickly.

Thousands of Detroiters have decided to refuse to register and refuse to permit the military authorities to conscript them to fight in a war about which they were not consulted. Will you stand with them and join their ranks? Will you stand up like a man for your rights NOW, or will you cringe like a coward when the supreme test of your manhood arrives?

The question is simple.

Will you go forth and murder your fellowmen, against whom you have no grudge, or will you refuse to participate in the murder party? Are you ready to stand with men who will go down in history as the real men of the day, by fighting to maintain such democratic rights and privileges as have been gained through years of sacrifice, or will you sheepishly follow the American murder machine?

Better a prison cell than the blood of innocent workers on your hands.

BE A MAN!"

The plaintiff in error moved to quash the indictment, and when that motion was denied filed a demurrer, which was overruled. He at first entered a plea of not guilty, but afterwards withdrew it, and entered a plea of guilty, and thereupon a fine of $500 was imposed. He moved in arrest of this judgment, and, this being denied, sued out the writ of error, which brought the case here.

The motion to quash the indictment, the demurrer, and the motion to arrest the judgment entered upon the plea of guilty, all seem to rest upon the same contentions, two of which may be adequately stated as follows:

1. That the Selective Draft Act is unconstitutional; and

2. That, though not named in the grounds either of the motion to quash or the motion in arrest of judgment, it is assigned for error that the grand jury which returned the indictment was not designated, selected, listed, or impaneled as required by the statutes of the United States and the rules of the trial court.

These two contentions are substantially similar to some of those considered and disposed of by our opinion delivered June 29, 1918, in another case, 252 Fed. 74, —— C. C. A. —— (No. 3176), of the same plaintiff in error against the United States. What was said in that opinion on these contentions need not be repeated, but it leads to the conclusion that neither of them is maintainable.

[1] 3. A third contention is that the indictment charges two distinct offenses under section 37 of the Penal Code, it being supposed that it was intended to charge that there was also a conspiracy to defraud the United States. Obviously, we think, no such charge is made, inasmuch as there is no specification of any facts to constitute an offense of that character. It was not sufficiently charged, and the court below held that the words "to defraud the United States" found in the indictment were surplusage, and this, we think, was correct. It becomes clear, therefore, that only one offense is charged, and the contention to the contrary cannot be sustained.

4. What is referred to in the indictment as section 37 of the Penal Code is section 5440 of the Revised Statutes (section 10201, Comp. Stats. 1916), which has been before the courts for construction in

many cases, not only those reported but in every-day trials. Frequently an indictment is founded on a conspiracy to defraud the United States, and this, per se, is one of the separate and distinct offenses made punishable by the section. But probably more frequently the alleged conspiracy is one to violate some law of the United States, and, in order that the accused may be informed of what he is to answer, the indictment must definitely allege facts which show the unlawful characteristics of his acts as fixed by some statutory enactment. Only a few cases need be cited to clearly show the rule of pleading governing the latter class of cases. In Ex parte Wolf (D. C.) 27 Fed. at page 611, it was said:

"To constitute a good indictment under this section, it must charge that the conspiracy was to do some act made a crime by the laws of the United States, and it must state with such reasonable certainty the acts intended to be effected or carried out by the agreement of the parties so that it can be seen the object of the conspiracy was a crime against the United States."

In United States v. Lyman (D. C.) 190 Fed. 414, 416, the rule was thus stated:

"To constitute the crime of conspiracy, the object of the unlawful agreement must be the commission of some offense against the United States in the sense only that it must be some act made an offense by the laws of the United States."

See, also, United States v. Thomas (D. C.) 145 Fed. 78, and Radin v. United States, 189 Fed. 569, 111 C. C. A. 6. In Brown v. Elliott, 225 U. S. 393, 32 Sup. Ct. 812, 56 L. Ed. 1136, and in France v. United States, 164 U. S. 677, 17 Sup. Ct. 219, 41 L. Ed. 595, the Supreme Court dealt with cases where the indictment carefully followed the rule stated, though its decisions were upon other questions.

The conspiracy statute is in these words (section 37, Penal Code), namely:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both."

Section 5 of the Conscription Act provides that—

"any person who shall willfully fail or refuse to present himself for registration, or to submit thereto as herein provided, shall be guilty of a misdemeanor."

Section 6, that—

"any person who * * * evades or aids another to evade the requirements of this act * * * shall, if not subject to military law, be guilty of a misdemeanor."

These are the requirements of the laws of the United States which the persons named in the indictment are accused of having conspired to violate by aiding persons liable to the draft to evade the duties prescribed.

[2] It is urged that the language of the indictment is indefinite, uncertain, and ambiguous; but, even if this be true, no objection was made on that ground in the court below. Consequently it is not available here, inasmuch as it has in no way been shown that it prejudiced the accused.

[3] The substantial objection insisted upon, is that the indictment does not state facts sufficient to show the commission of a public offense. Examining its allegations, we find that it plainly charges that the persons accused entered into a conspiracy to aid persons unknown, but who are described sufficiently to show that they came within the provisions of the Selective Draft Act, requiring them to duly present themselves for registration on June 5, 1917, to evade that duty, and that a specified act, namely, the writing and publishing of the paper set forth, was done by them to carry into effect the objects of the conspiracy.

Possibly the language of the indictment is not as clear as it might be because it, unnecessarily, names section 5 of the Selective Draft Act as the legislation involved, when, in fact, the offense charged must, in connection with section 37 supra, have its basis not only in that section, but also in section 6 of the act. In these circumstances, and in view of section 1025, R. S., Bennett v. United States, 194 Fed. 632, 114 C. C. A. 402, and Daniel v. United States, 196 Fed. 465, 116 C. C. A. 233, we hold that the indictment is based on those provisions of the act the language of which covers the offense charged, whether that language is found in section 5 or elsewhere—the act, and not the mere numbered sections of it, being the substantial thing to be regarded, and particularly when the language of the indictment clearly points out what conduct is aimed at and sought to be punished.

True, the indictment charges that the names of the persons thus aided were unknown to the grand jury, but the acts alleged to have been done by the accused to carry the conspiracy into effect were of a character to aid generally any and all persons within their reach and influence to evade those requirements; and though the influence of those acts might be far reaching, and might aid many to evade the duty of registering for the draft, punishment might be altogether avoided because of the impossibility of locating and naming the exact persons aided. This general consideration, indeed, has always been the basis of the practice of permitting an indictment to show that persons were unknown. 1 Wharton's Criminal Law, § 949; Wharton's Criminal Pleading and Practice, § 113; United States v. La Coste, 26 Fed. Cas. No. 15,548.

The character and contents of the publications printed and circulated by the accused, and fully set out in the indictment, were particularly and dangerously adapted to that end, and Congress cannot well be supposed to have left it open to persons disloyally disposed to adopt that manner of aiding others of similar inclinations who were subject to the draft, but desirous of evading it. We conclude, therefore, that the indictment sufficiently charges a public offense, and that it is not so vague, indefinite, or uncertain as to prejudice the substantial rights of the accused, although the individuals thus aided are

not named. What we shall presently say upon the motion to arrest the judgment, notwithstanding the plea of guilty, may also support this conclusion.

[4] 5. Section 332 of the Criminal Code (Comp. St. 1916, § 10506) reads as follows:

"Whoever directly commits any act, constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal."

It is insisted that the operation of these provisions would make "principals" of the persons accused in the indictment. If we assume (as is unavoidable) that this is correct, the Selective Draft Act in no way makes them anything else, and we have been altogether unable, therefore, to agree to the conclusion urged by counsel that this section can or should have any effect upon the case favorable to plaintiff in error.

The indictment plainly charges that the persons named therein conspired and agreed together to aid persons to the grand jurors unknown to evade the requirements of the act, and that in order to effect the object of such conspiracy they published and widely circulated the paper set forth therein, and which is well adapted to the end in view. Plaintiff in error by his plea of guilty of the offense thus charged left no doubt of the truth of the facts alleged against him. In this situation—the act being constitutional—it is difficult to perceive any grounds for arresting the judgment based upon that plea. The judgment is therefore affirmed.

KNAPPEN, Circuit Judge. I entirely agree that the action of the District Court was right and that it should be affirmed. I construe the indictment, however, as charging a conspiracy not merely to aid but also to counsel and induce others to violate the Selective Draft Act by refusing to register; and I think section 332 of the Criminal Code thus has application.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes