## JOHNSON v. BIDDLE, Warden.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1926.)

No. 7065.

1. **Indictment and information** ⬉108—**If an offense is otherwise fully stated in an indictment, a mistake in referring 'to a statute is surplusage and does not render the indictment invalid.**

Where reference to a statute must be considered, because the indictment is senseless, or lacking in essential allegations, unless the reference is considered, a misrecital may be fatal; but, if an offense is otherwise fully stated in an indictment, a mistaken reference to a statute is surplusage and does not render the indictment invalid.

2. **Indictment and information** ⬉119.

"Surplusage" is any fact or circumstance laid in the indictment which is not a necessary ingredient of the offense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Surplusage.]

3. **Evidence** ⬉5(2).

Courts take judicial notice that the United States is or is not engaged in war.

4. **Army and navy** ⬉47.

Charges before courts-martial are not governed by the strict rules relating to indictments.

5. **Army and navy** ⬉47—**A mistaken reference to Article of War and allegation that crime was committed in time of war held surplusage, and not to render charge for murder invalid or deprive court-martial of jurisdiction (Article of War 92 [Comp. St. § 2308a]; former Article of War 58 [Rev. St. § 1342]).**

Where specifications of charge against soldier for murder committed in Mexico contained all essential allegations necessary to a charge of murder under Article of War 92 (Comp. St. § 2308a), court-martial was not deprived of jurisdiction because charge. mistakenly stated that Article of War violated was former Article of War 58 (Rev. St. 1342), or because it contained allegation that offense was committed in time of war, as both allegations could be regarded as surplusage.

6. **Habeas corpus** ⬉30(2).—**It is duty of court-martial to consider essential elements of accusation, and its ruling on sufficiency of pleadings is 'not ordinarily subject to review on habeas corpus.**

It is duty of court-martial to consider essential elements of accusation, and its ruling

on sufficiency of pleadings is not ordinarily subject to review on habeas corpus.

**7. Army and navy ⬳47—A court-martial held bound to take notice whether United States engaged in war.**

A court-martial held in 1919 would be bound to take notice that United States was then engaged in war and one in 1925 that nation was not then engaged in war.

**8. Army and navy ⬳47—Court-martial has right to disregard surplusage in charge.**

It has always been the right of courts upon trials under indictments to disregard surplusage, and this right is also properly exercised by courts-martial, which are often required to act speedily and in the field.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas corpus petition by Gus Johnson for a writ to be directed to W. I. Biddle, Warden of the United States Penitentiary at Leavenworth, Kan. From a judgment (3 F.[2d] 705), dismissing the petition, petitioner appeals. Affirmed.

Anthony P. Nugent, of Kansas City, Mo., for appellant.

Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan. (Al. F. Williams, U. S. Atty., and John N. Free, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for appellee.

Before SANBORN, Circuit Judge, and MUNGER and JOHNSON, District Judges.

MUNGER, District Judge. Appellant presented to the trial court a petition for habeas corpus, alleging that he was unlawfully imprisoned. The court sustained a motion by the defendant for the dismissal of the petition, because of the insufficiency of its allegations (see Ex parte Johnson [D. C.] 3 F.[2d] 705), and this appeal was taken from that judgment. The petition shows that the petitioner is confined in the United States Penitentiary at Leavenworth, Kan., in charge of the defendant, as warden of the penitentiary, by virtue of an order of commitment issued in pursuance of a judgment of a general court-martial, approved by the commanding general, as the reviewing authority. It alleges that this judgment is void because the charge stated no offense cognizable by the military court. As set forth in the petition, the record of the court-martial is as follows:

"Headquarters Punitive Expedition, U. S. Army Colonia Dublan, Mexico, January 24, 1917.

"General Court-Martial Orders No. 35.

"Before a general court-martial which convened at Colonia Dublan, Mexico, pursuant to paragraph 1, Special Orders No. 157, Headquarters Punitive Expedition, U. S. Army, October 17, 1916, was arraigned and tried: Private Gus Johnson, Company A, 17th Infantry.

"Charges.

"Charge: 'Murder, in violation of the fifty-eighth Article of War.' Specification: 'In that Private Gus Johnson, Company A, 17th U. S. Infantry did in time of war, willfully, unlawfully, feloniously and with malice aforethought murder and kill Private Frank Shea, Company A, 17th U. S. Infantry, by shooting him with a bullet fired from a service rifle.' This at Vado de Fusiles, Mexico, on or about the 26th day of December 1916.

"Pleas.

"To the specification: 'Not guilty.'
"To the charge: 'Not guilty.'

"Findings.

"Of the specification: 'Guilty.'
"Of the charge: 'Guilty.'

"Sentence.

"'To be dishonorably discharged from the service of the United States; to forfeit all pay and allowance now due, or to become due while in confinement under this sentence; and to be confined at hard labor at such place as the reviewing authority may direct, for the remainder of his natural life.'

"Action.

"In the foregoing case of Private Gus Johnson, Company A, 17th U. S. Infantry, the sentence is approved and will be duly executed. The United States Pententiary, Leavenworth, Kansas, is designated as the place of confinement. This prisoner will be sent under suitable guard to Ft. Bliss, Tex., pending his transfer to said penitentiary.

"By command of Major General Pershing.
"De R. C. Cabell.

"Colonel 10th

Cavalry, Chief of Staff.

"Hq., Base of Communications, Columbus, New Mexico,

"January 26, 1917."

An act of Congress approved August 29, 1916, provided new Articles of War. 39 Stat. 650 (Comp. St. §§ 2308a–2308c). Some of these articles were in force after August 29, 1916, but others were not in force until March 1, 1917. 39 Stat. 670, c. 418, § 4 (Comp. St. § 2308b). Article 92 was one of the articles which became effective on August 29, 1916. It is as follows:

"Art. 92. *Murder—Rape.*—Any person subject to military law who commits murder or rape shall suffer death or imprisonment for life, as a court-martial may direct; but no person shall be tried by court-martial for murder or rape committed within the geographical limits of the states of the Union and the District of Columbia in time of peace."

The article of war providing for punishment of murder, as it existed before August 29, 1916, was as follows:

"Art. 58. *Certain Crimes, during Rebellion.* In time of war, insurrection, or rebellion, larceny, robbery, burglary, arson, mayhem, manslaughter, murder, assault and battery with an intent to kill, wounding, by shooting or stabbing, with an intent to commit murder, rape or assault and battery with an intent to commit rape, shall be punishable by the sentence of a general court-martial, when committed by persons in the military service of the United States, and the punishment in any such case shall not be less than the punishment provided, for the like offense, by the laws of the state, territory, or district in which such offense may have been committed." Rev. Stats. § 1342, 4 Comp. St. 1916, p. 3941.

The date of the crime charged against the petitioner is December 26, 1916, and the judgment of the court-martial was rendered and approved in January, 1917. The petitioner was one of the soldiers in that portion of the United States army, under command of General Pershing, which crossed the borders of the United States and proceeded into Mexico as a punitive expedition seeking to capture Pancho Villa and others who were alleged to have unlawfully entered the United States from Mexico as an armed force, and to have returned to Mexico after committing crimes of violence in the United States. The only question that can be considered in this proceeding in habeas corpus is whether or not the court-martial was without jurisdiction to hear and determine the charge against the petitioner. Ex parte Mason, 105 U. S. 696, 697, 26 L. Ed. 1213; In re Grimley, 137 U. S. 147, 150, 11 S. Ct. 54, 34 L. Ed. 636; Carter v. Roberts, 177 U. S. 496, 498, 20 S. Ct. 713, 44 L. Ed. 861; Carter v. McClaughry, 183 U. S. 365, 380, 22 S. Ct. 181, 46 L. Ed. 236; Collins v. McDonald, 258 U. S. 416, 418, 42 S. Ct. 326, 66 L. Ed. 692. The claim of the petitioner is that the court-martial did not have jurisdiction of the offense charged, because the record of the proceedings of the court-martial shows that the charge against him was of an offense against the provisions of Article 58. He further claims that he was not subject to trial and punishment under this article, because the homicide was not "in time of war" as alleged in the specifications. The argument in support of the latter proposition asserts that there was no state of war at that time in which the United States was engaged.

It is not necessary to decide this question, because Article 58, so far as it related to murder, was repealed on August 29, 1916, by the provisions of the new Article of War No. 92. Before the enactment of the new Article 92, murder, committed by persons in the military service of the United States, and in time of war, was punishable by the sentence of a general court-martial, but, if not committed in a time of war, and if the offense was punishable by the laws of the land as an offense against the person of a citizen of any of the United States, it was the duty of the military officer to deliver the offender to the civil magistrate, if possible. Articles of War 58, 59; Rev. Stats. § 1342. The new Article of War No. 92 was broader than former Article 58, because of the definition of those subject to military law found in the new Article of War No. 2, and because of the omission of the restrictive words "in time of war" as found in former Article No. 58, but it denied the right of trial by court-martial for murder committed in the geographical limits of the states or the District of Columbia in time of peace. After August 29, 1916, Article 92 of the new Articles of War was the only article in force which provided a punishment for the specific crime of murder by a person subject to military law.

Coming to the consideration of the petitioner's contention that the court-martial was without jurisdiction to try him, because the charge made against him was not of an offense under the new Article of War No. 92, but of an offense under the old Article of War No. 58, it is true that the accusation against the petitioner began with the words "Charge: Murder in violation of the fifty-eighth Article of War"—and in the specifications the murder was alleged to have been committed "in time of war." No claim is made that Article 92 did not apply to the offense committed by the petitioner, and no claim is made that the specifications do not contain all the essential allegations necessary in a charge of murder, if drawn under that article, but the contention is that the accusation is so vitiated by the words in the charge, "in violation of the fifth-eighth Article of War," and by the words in the specifications,

"in time of war," that the court-martial was without jurisdiction to make a finding of guilt.

[1] If the charge is tested by the rules applicable to indictments, even when they are directly attacked, neither the mistaken reference to the fifty-eighth Article of War, nor the allegation of the existence of war, is a fatal defect. The ancient rules as to the effect of even a slight error in the recital of a statute in an indictment have been much relaxed. Where the reference to the statute must be considered, because the indictment is senseless, or lacking in essential allegations unless the reference is considered, a misrecital may be fatal; but, if an offense is otherwise fully stated in an indictment, a mistaken reference to a statute is surplusage and does not render the indictment invalid. Taylor v. United States (C. C. A.) 2 F.(2d) 444, 446; Biskind v. United States (C. C. A.) 281 F. 47, 49, 28 A. L. R. 1377; Maresca v. United States (C. C. A.) 277 F. 727, 740; Vedin v. United States, 257 F. 550, 551, 168 C. C. A. 534; Sugar v. United States, 252 F. 79, 84, 164 C. C. A. 191; Ex parte King (D. C.) 200 F. 622, 629; Commonwealth v. Washburn, 128 Mass. 421; People v. Reed, 47 Barb. (N. Y.) 235, 242.

[2-4] The allegation that the offense was committed "in time of war" also comes within the definition of surplusage, as "any fact or circumstance laid in the indictment which is not a necessary ingredient of the offense" (2 Hale P. C. 187, n7; Archbald, Crim. Pl. 42), because it was unnecessary either to plead or prove that fact (Davis on Military Law, 441). The courts take judicial notice that the United States is or is not engaged in war. Davis on Military Law, 441; 1 Chamberlayne on Ev. 789. But charges before courts-martial are not governed by the strict rules relating to indictments. No statute prescribes the form of such charges, and the forms used depend upon military usage. Formerly, in the usage of the British army, the charge and specifications were blended, but in the usage prevailing in the military service of the United States the accusation consists of two parts, known as the "charge" and the "specifications." 1 Winthrop on Military Law (2d Ed.) 188; 7 Opinions Atty. Gen. 601, 603. The "charge" is not a statement of the facts, but is a designation of the specific offense in the nature of a generic name or brief description of it. Carter v. McClaughry, 183 U. S. 365, 386, 22 S. Ct. 181, 46 L. Ed. 236; 7 Opinions Atty. Gen. 601, 603. There is no established form for the charge. In the forms set forth and ap-

12 F.(2d)—24

proved in Winthrop on Military Law, 1557–1575, and in Davis on Military Law, 641, 643, 681, are such as "sleeping on post, in violation of the thirty-ninth Article of War" and "burglary, in violation of the fifty-eighth Article of War." In the Manual for Courts-Martial (1921), published by order of the President for use in the armies of the United States, the form of the charge is merely, "violation of the * * * Article of War" (pages 566, 591), while, in the manual of instructions for the navy, entitled "Naval Courts and Boards" (1917, pages 88–133), the form of the charge is such as "assault" or "drunkenness" without adding either in the charge or specifications, that it is in violation of an article for the government of the navy. Rev. Stats. § 1624 (Comp. St. § 2961). Writers on military law agree that it is unnecessary to state the Article of War violated. Tytler on Mil. Law, 113; 2 Winthrop on Mil. Law (2d Ed.) 210; Davis on Mil. Law, 641. In Carter v. McClaughry, 183 U. S. 365, 386, 22 S. Ct. 181, 189 (46 L. Ed. 236), the court said:

"The charge proper designates the military offense of which the accused is alleged to be guilty. The specification sets forth the acts or omissions of the accused which form the legal constituents of the offense. The pleading need not possess the technical nicety of indictments as at common law. 'Trials by courts-martial are governed by the nature of the service, which demands intelligible precision of language but regards the substance of things rather than their form.' 7 Op. Atty. Gen. 604."

The opinion of the Attorney General from which this quotation was taken also states:

"Hence, undoubtedly, the most bald statement of the facts alleged as constituting the offense, provided the legal offense itself be distinctively and accurately described in such terms of precision as the rules of military jurisprudence require, will be tenable in court-martial proceedings, and will be adequate ground work of conviction and sentence." Page 164.

[5-8] In Smith v. Whitney, 116 U. S. 167, 185, 6 S. Ct. 570, 29 L. Ed. 601, the court quotes with apparent approval the decision of Lord Denman agreeing with a remark of Lord Loughborough in Grant v. Gould, 2 H. Bl. 69, that it would be extremely absurd to expect the same precision in a charge brought before a court-martial as was required to support a conviction by a justice of the peace. See, also, Tytler on Mil. Law, 109; Davis on Mil. Law, 69; 1 Winthrop on

Mil. Law, 189. Considering the nature of the forms allowed in accusations of this kind, that the specifications state the facts which the accused is required to meet, and that the charge often is a mere title or brief designation of the class or nature of the offense charged, sometimes a single word, such as "robbery" or "mayhem," no reason is perceived why a mistake in stating, in the charge proper, the Article of War violated, should cause the court-martial to lose jurisdiction to proceed to judgment, when the remainder of the charge and the specification fully apprise the accused of the nature of the accusation. It is the duty of the court-martial to consider the essential elements of the accusation, and its ruling on the sufficiency of the pleadings is not ordinarily subject to review on habeas corpus. United States v. Maney (C. C.) 61 F. 140, 142; Ex parte Dickey (D. C.) 204 F. 322, 325. Nor is any reason perceived why a needless allegation in the specifications that the offense in question was committed in time of war was a jurisdictional defect. A court-martial held in 1919 would be bound to take notice that the United States was then engaged in war, and one held in 1925 would be bound to take notice that the nation was not then engaged in war. It has always been the right of courts upon trials under indictments to disregard surplusage, and this right is also properly exercised by courts-martial, often required by the exigencies of military service to act speedily and in the field.

No lack of jurisdiction to render judgment against the petitioner was shown by the application for the writ, and the judgment will be affirmed.