**UNITED STATES v. PRUITT.**
Cr. No. 5316.

United States District Court
S. D. Texas, Corpus Christi Division.
April 17, 1954.

Supplemental Opinion May 14, 1954.

Malcolm R. Wilkey, U. S. Dist. Atty., Chas. L. Short, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Hardin D. Pruitt, pro se.

ALLRED, District Judge.

On November 7, 1952, defendant was convicted by a jury of conspiracy to violate the Marihuana Tax Act (count 1) in violation of 26 U.S.C.A. § 2557(b); unlawfully acquiring marihuana (counts 4, 10) in violation of 26 U.S.C.A. § 2593

(a); and unlawfully transferring marihuana (counts 5, 7 and 11) in violation of 26 U.S.C.A. § 2591(a).

The United States Attorney having filed an information charging defendant with previous convictions for violating the Marihuana Tax Act, on February 7, 1939 and March 29, 1948, defendant was sentenced, on November 11, 1952, to two years on count 1 and ten years on the remaining counts, to run concurrently, a total of ten years. A fine of $1 was assessed on each count, to be collected on execution only.

Defendant intelligently had waived his right to counsel on the trial, after careful and repeated admonition by the court as to his right to counsel. However, after conviction, the court appointed the Honorable Jerry D'Unger, an attorney of this court, to represent defendant on the appeal. D'Unger who had represented him upon his trial in the 1948 case, prepared a proper notice of appeal in forma pauperis, including the preparation of a stenographic transcript of the proceedings. The appeal was dismissed by the Court of Appeals for the Fifth Circuit on June 5, 1953.

Defendant, now confined in the United States Penitentiary at Leavenworth, Kansas, has filed with the clerk what he styles "A motion for leave to file and to assign counsel in forma pauperis, a motion for new trial, a motion to vacate judgment and sentence and a petition for writ of habeas corpus ad prosequendum. Notice was given of the bringing on of such motions for March 20, 1954, but the court directed that such motions be submitted on March 22nd, the regular motion day, instead."

Defendant's motion for new trial reads as follows:

"Motion for a New Trial
"Based upon newly discovered evidence the defendant moves as follows:

"(1) To grant a new trial based upon newly discovered evidence.

"(2) Jurisdiction is involved under (A) Rule 33. Fed.Rules Crim. Pro.B.Rule #2 of Crim.App. rules, 1933, 292 U.S. 661 (18 U.S.C. Foll, 688c) Rule 59 Fed.Rules Civ.Proc. Supreme Court Construction: Robinson v. U. S., 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944; Chatwin v. U. S., 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198; U. S. v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; Cleveland v. U. S., 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12; U. S. v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610; Krulewitch v. U. S., 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790.

"(3) The defense was substantially prejudiced and deprived of a fair trial and denied due process of law as guaranteed by U. S. constitution Amendment No. 5 in that the charges as described in the indictment do not cite a violation cognizable by any U. S. Court.

"(4) The defense has just discovered this new evidence otherwise he would have admitted it during the trial stated."

Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that a motion for new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. The decisions cited by defendant in his motion are copied exactly as they are grouped under "Supreme Court Constructions" appearing immediately after Rule 33 in the unannotated 1950 Revised (single volume) Edition published by the West Publishing Company. They are not helpful or applicable here.

The motion for new trial is wholly inadequate. Nothing is alleged as to the nature of the claimed newly discovered evidence, whether it is cumulative, or could have been discovered by diligence, etc. Even if the motion were sufficient, new trials are granted only with great caution. U. S. v. Hiss, D.C. N.Y., 107 F.Supp. 128, affirmed 2 Cir., 201 F.2d 372; certiorari denied 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368. De-

fendant's motion for new trial is overruled.

█ The allegation in paragraph 3 of defendant's motion that the defense was substantially prejudiced and denied due process "in that the charges as described in the indictment do not cite a violation cognizable by any U. S. Court" are not grounds for new trial but, if true, would afford a basis for vacating the conviction under 28 U.S.C.A. § 2255. It will be discussed, therefore, under the motion to vacate.

"The Motion to Vacate

In addition to paragraph 3, quoted above, defendant alleges:

"Allegation (3)

"The petitioner is being held in unlawful confinement in violation of due process of law clauses of U. S. Const. Amend. No. 5."

"Motion to Vacate Judgment and Sentence: (28 U.S.C. 2255)

"Comes now Hardin D. Pruitt who moves the court to vacate judgment and sentence, relying on the laws as made and these indisputable facts:

"(1) The court erred and lacked jurisdiction to pronounce judgment and sentence in 1952 for alleged violation of the 1937 Marihuana Tax Act, which was repealed on Feb. 10, 1939.

"Law Relied On:

"Internal revenue code title 26, Marijuana tax act of 1939, Feb. 10, ch. 2, 53, Stat. 1–504.

"Claim:

"The sentence is void.

"Demand:

"The judgment and sentence must be vacated."

Apparently by way of summary, defendant further pleads:

"Petition for Writ of Habeas Corpus Ad Prosequendum (28 U.S.C. 2241–55)

"Comes now Hardin D. Pruitt petitioner herein who is being held in unlawful confinement, by C. H. Looney by virtue of authority issued from this court under color of a void judgment and sentence, illegally confining petitioner is direct violation of U. S. constitution Amend. #5. Said petitioner is a citizen of America by birth, of legal age and sound mind, he files because he believes his cause has merit; he believes he is entitled to redress; he petitions the court to issue the writ as prayed; for the following reasons:

"Allegation No. 1

"The judgment and sentence is void in toto because the indictment cites by reference alleged violation in 1952 of section 2591(a) title 26, U.S.C., section 2593(a) title 26 U.S.C. and twice more violation of section 2591(a) title 26 U.S.C. of the 1937 Marijuana tax act which was repealed Feb. 10, 1939.

"Allegation No. 2

"The court lacked jurisdiction to pronounce judgment and sentence because the defendant was indicted, tried convicted, and sentenced for alleged violation of a repealed act (Marijuana tax act).

"Relief Requested:

"The petitioner respectfully requests that the court issue the writ as prayed for, by issuing a writ of attachment and for subpoena for petitioner's presence in court so that he may present matters of factual evidence as well as introduce testimony to sustain his claim of illegal confinement and do all things necessary in the interest of justice the petitioner ipse dixit, requests ad prosequendum form of writ to be issued.

"Final Summary:

"By section 4 four of the codifying act of Feb. 10, 1939, all laws and parts of law embodied in the Marijuana tax act of 1937 were repealed. See: secs. 1–10 internal revenue code, also see: 3b1, comm., 130:

State ex rel. Deef Fabinski, 111 Fla. 454, 52 So. 207, 210 [sic]. See U. S. Constitution—Amend No. 5."

Defendant's complaint, as I gather from the foregoing, boils down to this: Counts 2 and 4 charged that on the 11th and 28th days of April, 1952, he, being "a transferee required to pay the transfer tax *imposed by the Marihuana Tax Act of 1937*," acquired certain quantities of marihuana "without having paid the transfer tax *imposed by said Act*," whereas the law in effect at the time, and under which he was convicted, 26 U.S. C.A. § 2593(a), read: "It shall be unlawful for any person required to pay the transfer tax *imposed by section 2590(a)* to acquire * * * any marihuana without having paid such tax; * * *" (Emphasis supplied); that the Marihuana Tax Act of 1937 was repealed by the Internal Revenue Code, the Act of Feb. 10, 1939, ch. Dec. 4, 53 Stat. 1; that, therefore, defendant's conviction was void since the Marihuana Tax Act of 1937 no longer was in effect.

This attack cannot be made upon counts 5, 7 and 11 which charged, substantially in the language of the statute, that defendant unlawfully transferred to one W. H. Newkirk described quantities of marihuana "which transfer was not then and there made in pursuance of a written order of and from the said W. H. Newkirk on a form issued in blank and furnished for that purpose by the Secretary of the Treasury of the United States of America. (Vio. Sec. 2591(a) ), Title 26, U.S.Code." Since defendant was sentenced to serve ten years concurrently on these valid counts, it ordinarily would be immaterial that his conviction on counts 4 and 10 were invalid. But I have concluded to write at length on the question raised as to counts 4 and 10, in view of the fact that the 10-year sentence on each count was based upon defendant's prior convictions in 1939 and 1948, and the fact that the second conviction in 1948 was upon a single count alleging that he was a transferee of marihuana "required to pay the transfer tax, as required by Sec-

tion 7 of the Act of Congress of August 2, 1937, known as the 'Marihuana Tax Act of 1937' "; and in view of the further fact that a series of motions to vacate similar convictions are beginning to reach the district from inmates at Leavenworth and other Federal prisons.

Section 7 of the Marihuana Tax Act of 1937 levied a tax of $1 per ounce upon transfers of marihuana by any person who had registered and paid the special tax levied by section 7 of that act; and a tax of $100 per ounce upon persons who had *not* registered and paid such tax. Section 8 made it unlawful "for any person who is a transferee required to pay the transfer tax imposed by section 7 to acquire or otherwise obtain any marihuana without having paid such tax; * * *."

The foregoing were codified into and by the Act of Feb. 10, 1939, the Internal Revenue Code. Sections 7 and 8 of the Marihuana Tax Act of 1937 became sections 2590(a) and 2593(a), respectively, of Title 26. So far as pertinent here, the only material change was that the language " * * * transferee required to pay the transfer tax imposed by section 7 * * *" used in old section 8 of the Act of 1937, was changed to read, as at present, " * * * transferee required to pay the transfer tax imposed by section 2590(a)." Section 4 of the codification of the Internal Revenue Code, Act of Feb. 10, 1939, repealed "all such laws and parts of laws codified herein, to the extent they relate exclusively to internal revenue * * *", with a savings clause as to pending proceedings, etc. 26 U.S.C.A. preceding § 1.

Rule 7(c), Federal Rules of Criminal Procedure, provides in part:

"The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the

error or omission did not mislead the defendant to his prejudice."

This rule was but a recognition of existing law. Notes of Advisory Committee on Rules under Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C.A. The cases cited by the Advisory Committee [1] and many others appearing under annotation 18 of Rule 7(c), 18 U.S.C.A., Federal Rules of Civil Procedure, deal with endorsements or references, on the margin of the indictment, or at the conclusion of a count, to the statute alleged to have been violated; but the rule has been applied even where the reference appeared in the body of the indictment or charge.[2] The general rule, as well as the vice at which defendant is striking, is best stated by Judge Bratton in Martin v. U. S., 10 Cir., 99 F.2d 236, 238, as follows:

"Stress is laid upon the point that the endorsement on the indictment recited that the charge was for a violation of Section 1287. The offense laid in an indictment is charged by the allegations of fact, not by reference to statutes. If reference to a statute is essential for the reason that the indictment does not make sense or is lacking in necessary allegations without it, an incorrect reference may be fatal. *But where an offense is otherwise sufficiently charged, an incorrect reference to a statute does not render the indictment invalid. That doctrine applies where the mistaken reference occurs in the body of the indictment.* John-son v. Biddle, 8 Cir., 12 F.2d 366. No case has been called to our attention and we venture to think none can be found in which it is held that a mistaken reference to a statute appearing in the endorsement on an indictment affects the element of the offense charged." (Emphasis supplied.)

So the test here is, not where the incorrect reference to the statute appears in the indictment, but, does it otherwise sufficiently charge the offense? In Symons v. U. S., 9 Cir., 178 F.2d 615, 621, it is stated that the essential elements of the offense denounced by section 2593(a) are: "(1) That the defendant is a transferee (2) required to pay *the* transfer tax. (3) That he obtained marihuana (4) without having paid *the* tax." (Emphasis supplied.) There the indictment charged Symons with acquiring marihuana "without having paid the transfer tax imposed by 26 U.S.C.A. § 2590(a), he being a transferee required to pay such tax." So, "the tax," held by the court to be an essential element, is, in the language of the statute, "the transfer tax imposed by section 2590(a)" of Title 26, not by "the 'Marihuana Tax Act of 1937'," as charged here.[3]

Ordinarily, of course, an indictment is sufficient if it follows the language of the statute,[4] but it need not employ the exact words of the statute, substantially in the language of the statute being sufficient if it fairly apprises the defendant of the offense with

1. Williams v. U. S., 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509; U. S. v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788.

2. Biskind v. U. S., 6 Cir., 281 F. 47, 28 A.L.R. 1377; Johnson v. Biddle, 8 Cir., 12 F.2d 366.

3. Plaintiff's counsel argue that defendant "was not charged with not having paid a transfer tax, or not rendering a return, but for possession of marihuana, and for having acquired such marihuana not in pursuance of a written order form." This is incorrect. While counts 4 and 10, after charging the statutory elements of the offense, then allege "that is to say, the said Hardin Pruitt did then and there have in his possession and under his control a quantity of marihuana to-wit: (describing it) which had theretofore been transferred to the said Hardin Pruitt not in pursuance of a written order issued for that purpose by the Secretary of the Treasury," yet this is not an offense. The presumptive provision of section 2593 (a) relates to a *means of proof*, not to *definition*, of the crime. Cratty v. U. S., 82 U.S.App.D.C. 236, 163 F.2d 844, 849. (Emphasis supplied.)

4. Robertson v. U. S., 5 Cir., 168 F.2d 294; U. S. v. Williams, 5 Cir., 203 F.2d 572.

which he is charged;[5] the test being whether it contains such a plain, definite and certain statement of essential facts as to enable him fully to prepare his defense and plead jeopardy.[6] While the matter is not entirely free from doubt, I think the indictment here meets these tests. Defendant knew that he was subject to the tax imposed by section 2590 (a). The erroneous reference to "the Marihuana Tax Act of 1937," from which section 2590(a) was derived, did not mislead him. No question as to this irregularity was raised upon the trial, or on motion for new trial after his attorney was appointed. He was charged in the same language in both of his former trials for the same offense, in which acquisitions of marihuana after the effective date of the Act of February 10, 1939, were charged. He and his co-defendants in Cr. 3225 (the conviction of March 29, 1948) were represented by able counsel. Yet the question was not raised. Indeed, although this form of indictment has been used in hundreds of cases in this district from 1939 until the present time, the question was never raised until the recent flow of motions to vacate originating from behind the walls of Leavenworth prison. These indictments were defective but not void.

The motion to vacate on this ground is overruled.

■■■ Defendant is not entitled to assignment of counsel upon a motion to vacate, that being a matter for the court to determine in the exercise of discretion.[7] Nor is there any necessity for the defendant to be brought before the court since only questions of law are raised which, under 28 U.S.C.A. § 2255, may be determined "without requiring the production of the prisoner at the hearing."[8]

Defendant's motions are overruled. The Clerk will notify counsel and mail a copy of this memorandum to defendant.

Supplemental Opinion

■■■ On April 17, 1954, the court filed a memorandum overruling defendant's motion to vacate the judgment and sentence herein. Defendant has filed a motion to vacate the previous order upon two grounds which will be stated as discussed:

First

That defendant was not advised by the court of the consequences of acknowledging his identity under the Boggs Act; that he did not know the serious consequences of the act of admitting identity; that the trial court was obliged to fully apprise him of the consequences; that the court erred in accepting defendant's plea without apprising him of the provisions of the Boggs Act which imposed progressively heavier sentences upon second and third narcotic violators.

Defendant cites Gannon v. United States, 6 Cir., 208 F.2d 772, 773. In that case the defendant and his wife were charged with illegal possession of narcotic drugs in violation of Section 2553(a), Title 26 U.S.C.A. Gannon, an addict, signed a waiver of indictment and, in response to an inquiry from the court, stated that he did not desire an attorney because he was very sick and needed hospitalization; and that was why he was trying to hurry " 'this thing along'." He thereupon pleaded guilty to the charge; that the assistant district attorney then filed an information charging defendant with four prior convictions under the narcotic laws. When the charges were read, Gannon made statements, which the court of appeals said, sustained his contention that the *waiver of his right to counsel and the entry of his plea of guilty* "to the first Information" (the instant charge) was done without knowledge of the Boggs Act and its applicable provisions; that as an addict he expected to be confined at the Narcotics Farm at Lexington, Kentucky;

---

5. U. S. v. Franklin, 7 Cir., 188 F.2d 182.

6. U. S. v. Williams, 5 Cir., 203 F.2d 573.

7. Richardson v. U. S., 10 Cir., 199 F.2d 333.

8. Donovan v. U. S., 10 Cir., 205 F.2d 557.

that the existence and provisions of the Boggs Act was not explained to him prior to his plea; and *that he did not have the assistance of counsel guaranteed to him by the Sixth Amendment.* The court held that under such circumstances Gannon "did not competently, intelligently, and with full understanding of the implications, *waive his constitutional right to counsel.*" (Emphasis supplied.)

In final analysis, Gannon's conviction was set aside because he "did not competently, intelligently, and with full understanding waive his constitutional right to counsel," not because the provisions of the Boggs Act were not explained to him. That fact and his lack of knowledge of the Boggs was only *one* of the factors going to show that he did not competently and intelligently waive his right to counsel. The present case is altogether different, because:

*First:* As stated in the original memorandum, "Defendant intelligently had waived his right to counsel on the trial, after careful and repeated admonition by the court as to his right to counsel." He has not contended, and does not here contend, to the contrary.

*Second:* Defendant did not plead guilty. He pleaded not guilty.

*Third:* Defendant had the assistance of counsel, appointed by the court, but of his own choosing, before admitting his identity as the person twice previously convicted of marihuana violations as charged in the information.

*Fourth:* Defendant knew and realized the provisions of the Boggs Act as to accelerated punishment when the information charging the previous convictions was read to him and he admitted his identity.

The facts in support of the third and fourth conclusions stated above are shown conclusively by the record, as follows: After the verdict of the jury was brought in, on November 7, 1952, government counsel stated that defendant had two prior convictions and asked that he be committed pending sentence. The court thereupon postponed sentence for one week. One week later, on November 14, 1952, defendant appeared for sentence. The Assistant United States Attorney stated that he would like to file an information against defendant alleging two previous convictions. Thereupon the court stated that he would not pass sentence until Friday, (one week later) and then stated to defendant: "Now, in the meantime, Hardin, there is a charge against you that you have been convicted heretofore. Do you want an attorney to represent you any further?" To which defendant Pruitt replied: that he didn't think he had a fair trial and would like to have a new trial and set the verdict aside; that he would like to have a lawyer this time; that he thought, because he wasn't guilty, that he didn't need one but he saw now that he did need one; that his mother was seeing about an attorney, Mr. D'Unger, who was supposed to come back to see him that afternoon or evening.

The court then stated that he would pass the case for sentence until the next Friday (one week) to give defendant opportunity to make arrangements with Mr. D'Unger; and to give such counsel time to present a motion for new trial. The court then directed that the record show that Mr. D'Unger was appointed to represent defendant; and instructed the clerk to call Mr. D'Unger and tell him if the defendant could make arrangements "all right" but that if he couldn't D'Unger was appointed to represent him anyway.

One week later, on November 21st, defendant appeared with his attorney, Mr. D'Unger. The following (emphasis supplied) transpired:

"Mr. Childers: Your Honor, you will recall that, last week, I filed the information setting forth two prior convictions as to the defendant, Pruitt. I would like at this time—

"The Court: Yes. Have you been furnished with copies of the—a copy of the information?

"Defendant Pruitt: Yes, sir.

"The Court: Charging you with two prior convictions?

"Defendant Pruitt: Yes, sir.

"The Court: What is the plea as to that, Counsel?

"Mr. D'Unger: If the Court please, the information is substantially correct. I defended the defendant on his last trial, which resulted in a conviction and sentence—incidentally, by appointment, also—his sentence, at that time, I believe was fifty-four months, is that correct, Counsel?

"Mr. Childers: Fifty-four months.

"Mr. D'Unger: At that time, it was shown that that was the second conviction, so I am satisfied that the information is correct. I have a copy of it.

"The Court: Well, read over the information. You have been furnished with a copy of it, have you?

"Defendant Pruitt: Yes, sir.

"The Court: Read it over to him, please, Counsel, at this time, the information charging the previous conviction.

"Mr. Childers: (Reading the information) Are you the same person—

"Defendant Pruitt: Yes, sir.

"Mr. Childers: Convicted in both of those cases?

"Defendant Pruitt: Yes, sir.

"The Court: You admit these two prior convictions, do you,—

"Defendant Pruitt: Yes, sir."

Thereafter counsel for defense made a plea for a new trial but there was no intimation that defendant had not theretofore been convicted twice, as alleged in the information. On the contrary, the statements of his counsel show that he had theretofore been convicted substantially as alleged. That defendant understood the consequences of the admission of his identity is shown by the following:

"The Court: All right. Now Pruitt, personally, do you have anything you wish to say to me before I pronounce sentence upon you?

"Defendant Pruitt: Well, yes, sir.

"The Court: All right.

"Defendant Pruitt: I am not guilty, sir, and I know that it is not your fault that I am here, *and I know that there is not much you can do for me because of the new law that was passed.* You have been real nice to me.

"The Court: Well, if I thought there was any doubt about your guilt, I would set the conviction aside."

After further discussion between the court and defendant's counsel, the following transpired:

"The Court: Well, under this new law, I have no option. There is a minimum punishment of ten years upon conviction. I have no option in the matter.

"Mr. D'Unger: That's right, Your Honor.

"The Court: I couldn't grant a suspended sentence if I wanted to.

"Mr. D'Unger: Oh, no, sir, I wouldn't think of asking for a suspended sentence.

"The Court: I just have no option."

The court thereupon assessed the minimum punishment for a third offender. Defendant does not even now assert that he was not, or is not, the same person theretofore convicted on February 7, 1939, and March 29, 1948.

The foregoing clearly distinguishes this case from Gannon v. U. S., supra, upon which defendant relies. While in that case the court, in a preliminary discussion, says that a defendant shall be punished as prescribed by the Boggs Act, 26 U.S.C.A. § 2557(b), if he acknowledges identity in open court "after being duly cautioned as to his rights," yet, as pointed out, Gannon was without

an attorney, waived one because he was very sick, needed hospitalization and wanted to get it over with. He also made other statements tending to show that he was not guilty of possession of the drugs for which he was on trial. The Boggs Act simply provides that a defendant "shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted." Here both defendant and his counsel affirmed his identity in open court. The record shows defendant realized the consequences of the admission. I see no reason why the court, after such admission, should have advised him that if he wanted to deny identity, he could have a jury trial; especially where he does not even now claim that he is not the identical person previously convicted.

### Second

"The Act of November 2, 1951, is void because Congress had adjourned *sine die* on October 20, 1951; therefore, it was legally impossible for President Truman to return the signed Bill to Congress within 10 days (Sundays excepted). The ten (10) year sentence imposed upon defendant under the provisions of the Act of November 2, 1951 (Boggs Act) is void."

Article 1, § 7 of the Constitution reads, in part, as follows:

"Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated; who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by Yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

"Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill."

▮ Under the foregoing provision of the Constitution, the President may sign a bill, even though Congress has adjourned, but it must be done within 10 days after it is "presented" to him. Edwards v. U. S., 286 U.S. 482, 52 S.Ct. 627, 76 L.Ed. 1239. The very able treatise by Zinn [1], 12 F.R.D. 209, points to a number of indefinite provisions in the constitutional provision, including a needed definition of "presented," 12 F.R.D. at page 222. Mr. Zinn states that the customary practice is to send the enrolled bill to the White House where it is receipted for and stamped "The White House," with the date there-

---

1. Hon. Chas. J. Zinn, Law Revision Counsel, Committee on Judiciary, House of Representatives.

on. Of course, a reasonable time must be allowed after final passage of a bill for these mechanics to be carried out.

In the instant case, the Boggs Act, after having passed the House, was finally passed in the Senate on Saturday, October 20, 1951, on which date the 82nd Congress, 1st Session, adjourned sine die.[2] The bill (Public Law 255, 82nd Congress) was presented to the White House on Monday, October 22, 1951. It was signed by the President on November 2, 1951, the tenth day (Sunday excepted), after it was presented to him. It thereby became a law and is not void, as claimed by defendant.

Defendant's motion to vacate the previous order of April 17, 1954, and his motion to vacate the judgment and sentence is overruled. The Clerk will notify counsel and the defendant.

2. Congressional Record, October 20, 1951, p. 13777.