**Edward J. DILLON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17692.**

United States Court of Appeals Ninth Circuit.

Aug. 22, 1962.

Barnes, Circuit Judge, dissented.

Edward J. Dillon, appellant, in pro. per.

Sidney I. Lezak, Acting U. S. Atty., and William B. Borgeson, Asst. U. S. Atty., Portland, Or., for appellee.

Before POPE, BARNES and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellant was charged with the armed robbery of a federally insured bank in violation of 18 U.S.C. § 2113(a). He pleaded guilty and was sentenced. A motion to vacate sentence was filed under 28 U.S.C. § 2255, alleging in substance that appellant's plea was induced by the misrepresentations of an Assistant United States Attorney. The District Court ordered a hearing, at which appellant requested the court to appoint counsel to assist him. The request was denied. We hold that, in the circumstances of this case, denial of appellant's request for counsel was error.

I

The mandatory requirement of the Sixth Amendment regarding right to counsel [1] does not apply to indigent movants under 28 U.S.C. § 2255. This is the general view,[2] it seems soundly based on the underlying purposes of the Amendment.[3]

As this court has pointed out, the appointment of counsel may sometimes

---

1. "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." U.S.Const. amend. VI.

2. See, e.g., Tubbs v. United States, 249 F.2d 37 (10th Cir. 1957); Crowe v. United States, 175 F.2d 799, 801 (4th Cir. 1949); Green v. United States, 158 F. Supp. 804, 807–08 (D.Mass.1958). Cf. Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958); Matter of Dinerstein, 258 F.2d 609 (9th Cir. 1958); United States v. Caufield, 207 F.2d 278, 280 (7th Cir. 1953); Fellman, The Constitutional

Right to Counsel in Federal Courts, 30 Neb.L.Rev. 559, 595 (1951).

3. By interpreting the Amendment as conferring a right to counsel through direct appeal of the original conviction to the Court of Appeals [Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L. Ed.2d 593 (1957); Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958)], the accused is assured of representation by counsel throughout those proceedings in which guilt is finally determined and reviewed as of right. The same need for counsel is not in-

be mandatory even in those areas in which the Sixth Amendment does not apply. This is true when the circumstances of a defendant or the difficulties involved in presenting a particular matter are such that a fair and meaningful hearing cannot be had without the aid of counsel. Compliance with the due process clause of the Fifth Amendment[4] then requires that counsel be appointed.[5]

In the absence of such circumstances, a request for counsel in proceedings under Section 2255 is addressed to the sound discretion of the court. This is true at both the trial[6] and appellate[7] levels. The standard to be applied by the trial court in the exercise of this discretion has not been clearly established. There is case authority indicating that counsel should be appointed in collateral attack proceedings whenever it appears probable that any substantial issue,[8] or at least a substantial issue of fact,[9] will be presented. The same standard has been applied by Courts of Appeals in determining whether to appoint counsel in appeals from this type of proceeding[10] except, of course, that substantial issues at the appellate level are more likely to be issues of law.[11]

variably present where post-conviction remedies like motions under § 2255 are involved. They follow original criminal proceedings at every stage of which counsel has been provided [45 Minn.L. Rev. 783, 799 (1961)]; they are not a part of the basic processes for determining guilt [United States v. Hayman, 342 U.S. 205, 222–23, 72 S.Ct. 263, 96 L.Ed. 232 (1952); Matter of Dinerstein, 258 F.2d 609, 611 (9th Cir. 1958)]; they may be resubmitted [Hodge v. Huff, 78 U. S.App.D.C. 329, 140 F.2d 686, 689 (1944)]; and they are frequently frivolous [United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 715 (2d Cir. 1960); Machibroda v. United States, 368 U.S. 487, 497 n. 2, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962) (dissent); 45 Minn.L.Rev. at 799–800]. These reasons, rather than a classification of § 2255 proceedings as "civil" or "criminal," support the rule. As Mr. Justice Clark recently said of habeas corpus, another "civil" action, "the availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels." [Smith v. Bennett, 365 U.S. 708, 712, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). See also Daugharty v. Gladden, 257 F.2d 750, 759 n. 16 (9th Cir. 1958).] Realistically, a proceeding which may result in vacating a criminal judgment is, at least, not purely civil. It may be that for some purposes a motion under § 2255 should be treated as criminal. See Green v. United States, 158 F.Supp. 804, 807 (D.Mass. 1958).

4. "No person shall * * * be deprived of life, liberty, or property, without due process of law * * *." U.S.Const. amend. V.

5. Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). See also Green v. United States, 158 F.Supp. 804, 807–08 (D.Mass.1958).

6. Richardson v. United States, 199 F.2d 333, 335 (10th Cir. 1952); Hayes v. United States, 194 F.Supp. 807 (D.Colo. 1960); United States v. Pruitt, 121 F. Supp. 15 (S.D.Tex.1954). Cf. Fellman, supra note 2, at 595.

7. Herrell v. United States, 234 F.2d 814 (6th Cir. 1956); United States v. Caufield, 207 F.2d 278 (7th Cir. 1953). Cf. Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958).

8. Vinson v. United States, 235 F.2d 120 (6th Cir. 1956). If the test were "equal treatment for every litigant before the bar" [Coppedge v. United States, 369 U.S. 438, 447, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962)], it seems clear that appointment of counsel would be required in all such cases; a solvent defendant with a substantial issue to present would not appear pro se.

9. United States ex rel. Dennis v. Murphy, 265 F.2d 57, 58 (2d Cir. 1959); Thomas v. United States, 217 F.2d 494 (6th Cir. 1954); United States v. Paglia, 190 F. 2d 445, 448 (2d Cir. 1951); Ex parte Rosier, 76 U.S.App.D.C. 214, 133 F.2d 316, 333 (1942) (issue not affected by Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F. 2d 857 (1945)). See also Green v. United States, 158 F.Supp. 804, 807–08 (D. Mass.1958).

10. Edwards v. United States, 286 F.2d 704 (9th Cir. 1961); Anderson v. Heinze, 258 F.2d 479, 482 (9th Cir. 1958); Schlette v. King, 258 F.2d 561 (9th Cir. 1958); Matter of Dinerstein, 258 F.2d 609, 611 (9th Cir. 1958); United States v. Caufield, 207 F.2d 278 (7th Cir. 1953).

11. Herrell v. United States, 234 F.2d 814 (6th Cir. 1956).

We need not go so far. For purposes of this case it is enough to agree with the recent suggestion of the Court of Appeals for the Second Circuit that "where a petition for the writ [of habeas corpus] presents a triable issue of fact the clear presentation of which requires an ability to organize factual data or to call witnesses and elicit testimony in a logical fashion it is much the better practice to assign counsel." [12] There is no reason for applying a different standard in proceedings under Section 2255. Measured by this standard, we are satisfied that a proper exercise of discretion by the District Court required that appellant's request for counsel be granted; we therefore need not inquire whether in the circumstances of this case due process compelled the appointment of counsel.

We recognize, as the Court of Appeals for the Sixth Circuit recently said, "that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." [13] We are of the firm conviction that such an error occurred here.

## II

Appellant and Lovelace were jointly indicted for the robbery of a federally insured bank. The maximum prison sentence for the offense was twenty years. The government's case against appellant was strong; its case against Lovelace was weak. Various conferences were had between the parties, their lawyers, and the Assistant United States Attorney in charge of the prosecution. As a result, both defendants decided to plead guilty. Appellant asserts in the present motion that he did so on the basis of his understanding that he would receive a maximum sentence of ten years, and defendant Lovelace a maximum of five years. The sentences imposed were eighteen years and eight years, respectively.

Shortly after sentencing, trial counsel filed a motion to reduce sentence under Rule 35 of the Federal Rules of Criminal Procedure 18 U.S.C., which was denied. The trial judge presided at the hearing on that motion as well as at the hearing on the present motion.

At the opening of the hearing on the present motion, appellant requested a continuance, and asked that an attorney be appointed to assist him. The motion was denied.

Appellant was then advised that if he wished to take the stand and give testimony the court would hear him. Accordingly, he was sworn. Expressing ignorance as to how to proceed, appellant simply reasserted the truth of his allegation that he had been promised a ten-year sentence. He made no attempt to support his position by testifying as to his version of the incidents involved. He was cross-examined at length by an Assistant United States Attorney.

Appellant called and attempted to examine a number of witnesses regarding the incidents leading up to his plea of guilty, particularly the negotiations that occurred during the six weeks that elapsed between indictment and plea. The witnesses included the attorneys who had represented appellant and Lovelace at the trial (present at this hearing only as witnesses), Lovelace, the Assistant United States Attorney in charge of the prosecution of appellant and Lovelace, three men who apparently were deputy marshals at the pertinent time, and, finally, the sentencing judge. Appellant abandoned an initial purpose to call other witnesses, including two FBI agents. The principal witnesses called were cross-examined by an Assistant United States Attorney. Transcripts of proceedings at the time of sentence, and

---

12. United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 715 (2d Cir. 1960).

13. McBee v. Bomar, 296 F.2d 235, 237 (6th Cir. 1961). See also Beck v. Wings Field, Inc., 122 F.2d 114, 116 (3d Cir. 1941).

in connection with the subsequent motion to reduce sentence under Rule 35, were marked for identification and used in the course of the hearing.

At the opening of the second day of the hearing defendant renewed his request for counsel. It was again denied.

There was no evidence that appellant had been promised a maximum sentence of ten years, and the court so found. However, it did appear that the Assistant United States Attorney had agreed to recommend a maximum sentence of ten years for appellant. Appellant's version was that the Assistant United States Attorney was to make this recommendation to the judge at the time of sentencing, and also in the pre-sentence report. The Assistant United States Attorney's version was that he was to make the recommendation *if asked* by the court at the time of sentencing, and that appellant was aware of the fact that the court might not ask. The court did not ask; hence the government contended that failure to make the recommendation at the time of sentencing did not violate the understanding.

The hearing centered upon the issue thus presented. The court found that there was no absolute promise that a recommendation would be made, and that appellant knew a recommendation might not be requested.

But there is a difficulty in this approach to the problem which may have been critical. In the course of the hearing on the earlier Rule 35 motion for reduction of sentence, this exchange occurred:

"COUNSEL FOR APPELLANT: The U. S. Attorney, in our conversations, advised me that he could in no case make any sort of guarantee of sentencing; that he would make no recommendation, but if the Court were to ask for a recommendation that he would then recommend that Dillon be sentenced to a period of ten years and that Lovelace be sentenced to a period of five years.

"THE COURT: That's rather strange. In three years I have never asked the District Attorney for any such recommendation."

Because he was not asked, we cannot be sure that the Assistant United States Attorney knew in advance who the sentencing judge was to be, although it seems a fair assumption that he did, since the record indicates that appellant's counsel knew. Because he was not asked, we do not know whether the Assistant United States Attorney was aware that the sentencing judge had not requested a recommendation as to sentence from the government during the preceding three years, although it would seem unlikely that an Assistant United States Attorney would be unaware of the consistent and long continued practice of the district judge in a matter of such importance.

In any event, these lines of inquiry should have been explored. Affirmative answers might have provided a new and substantial basis for appellant's motion. If the Assistant United States Attorney knew that the judge who was to sentence appellant had not asked for a recommendation in three years, the representation by the Assistant United States Attorney that he would recommend a maximum of ten years at the time of sentencing "if asked" would have been wholly illusory. Since the representation was made in circumstances indicating that it was intended to and did serve as an inducement, it could only be concluded that appellant "was deceived * * * by the prosecutor into entering a guilty plea."[14] A plea induced by promises not intended to be kept would violate due process; a sentence based upon such a plea could not stand.[15]

14. Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941).

15. See Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941);

United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 712 (2d Cir. 1960), and cases cited. See also Shelton v. United States, 292 F.2d 346, 347 (7th Cir. 1961). Compare Machibroda v.

If these were the circumstances, the matters which concerned the court and which preoccupied its findings would have been largely irrelevant. It would have made no difference that the promise was conditional, if the condition itself was in essence a misrepresentation. It would have made no difference that appellant's counsel knew and told appellant that the judge might not request a recommendation, unless it also appeared that they were aware that the judge had not asked for such a recommendation in three years. No one suggests that they had such knowledge, and the serious reliance which they placed upon the Assistant United States Attorney's promise demonstrates that they could not have known.

As we have seen, the matter was not pursued in the Section 2255 hearing. Appellant had not been present at the earlier Rule 35 hearing at which the judge disclosed his practice with respect to requesting recommendations. Although appellant was given a copy of the transcript of the Rule 35 hearing during the course of the Section 2255 hearing, the significance of the judge's disclosure apparently did not occur to appellant until the close of the hearing.

It will be recalled that it was also appellant's understanding that the recommendation concerning his sentence was to be included in the pre-sentence report. The Assistant United States Attorney testified that he may have said that the recommendation for a ten-year sentence would be given to the Probation Officer, but, again, only "if the Probation Officer asked." Thus it became important to determine whether this representation was illusory. It was important to know whether the Probation Officer customarily obtained specific recommendations from the United States Attorney's office and included them in pre-sentence re-

ports, whether he did so in this instance, and, if so, what the recommendation was.

These questions were not effectively pursued when the Assistant United States Attorney in charge of the prosecution was on the stand. The appellant did not call the Probation Officer. He finally inquired of the judge whether such a recommendation appeared in the pre-sentence report. The judge sustained the government's objection to the question, and it was not answered.

Appellant repeatedly asserted his inability to cope with the problems facing him. It seems reasonably clear that lack of the assistance of counsel may have prevented the discovery, investigation, preparation, and adequate presentation of a substantial basis for appellant's motion.

■ The question is how badly the *prisoner* needed help; the seriousness of the problem must be judged from his point of view. "That which is simple, orderly and necessary to the lawyer," as the Supreme Court has pointed out, "to the untrained layman may appear intricate, complex and mysterious."[16] Even judged by a lawyer's standards, the issue presented here was not uncomplicated. Moreover, its resolution required the development of evidence relating to the judge's practice and that of the Probation Officer, the knowledge and understanding of the principals, and what actually transpired at a series of conferences held over a period of six weeks or more involving possibly a dozen persons, most of whom were lawyers or officials.

It is unlikely that a layman could properly investigate the problems presented by appellant's motion, even if he were not confined to prison or constantly under guard. And it is clear that a layman could not organize and present the evidence on such issues in a courtroom,

United States, 368 U.S. 487, 493, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962); Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941); McGuire v. United States, 289 F.2d 405 (9th Cir. 1961);

Heideman v. United States, 281 F.2d 805 (8th Cir. 1960).

16. Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

particularly when he himself had to be a principal witness.

It was reasonably evident at the outset that appellant's motion presented an issue that the court could not try—and certainly could not investigate—without the aid of counsel. A subtle and difficult issue of fact was involved. If the full extent of the need for counsel was not apparent at the opening of the hearing, we think it was clear when appellant renewed his motion at the opening of the second day. On the whole record we are left with a firm conviction that it was clear error to refuse appellant's request for a lawyer.

Other grounds urged for reversal by the appellant are unlikely to arise at a second hearing prepared and conducted by an attorney, and are not considered.

The judgment is vacated and the cause remanded for further proceedings.

BARNES, Circuit Judge (dissenting).

I respectfully dissent. The theory of the majority is that the district court is given a token and meaningless discretion to determine if a question raised by petitioner is simple or complex, or whether "the difficulties involved in presenting a particular matter are such that a fair and meaningful hearing cannot be had without the aid of counsel." In other words, this court purports to set itself up as better qualified to pass on whether an issue is simple or complex—whether the hearing is meaningful or unfair— than is the trial judge. This enables the majority to find support in United States ex rel. Wissenfeld v. Wilkins, 2 Cir. 1960, 281 F.2d 707. I do not differ with the Wilkins' rule on the facts present in Wilkins; I do not find the same or similar facts existing in this case, therefore, I do not think it controlling.

Without going so far as to say due process *required* the appointment of counsel in this case, the majority hold that the district court judge did not exercise "proper" discretion. In other words, that he had abused that discretion. And because, says the majority, there was this clear error of judgment, they reverse.

I say such a ruling on the facts of this case takes away as a practical matter *all* discretion from the trial judge. I have always understood that the very purpose of the rule giving the trial judge discretion in such matters was that he had so much better opportunity than any appellate court to scrutinize the demeanor and conduct of witnesses, and petitioners themselves.

The majority originally dismiss with two short sentences their attention to the motion filed by petitioner, shortly after trial, to reduce sentence. They say it was denied, and that the trial judge presided at that hearing, and on the present motion. They fail to note the same issue involved at this hearing was presented then; and that counsel of defendant's own choice and hire was present and participated in the hearing on that issue. This present motion then, was a rehash of a matter previously heard; at which time petitioner had counsel and competent advice, and the issue had a fair hearing.

Despite the rehashing of an issue already heard and passed upon when petitioner was represented by counsel, and despite a careful and sympathetic hearing by an experienced and capable trial judge; despite the presence of and testimony by (a) the attorneys who had represented petitioner and his codefendant at the trial, (b) the Assistant United States Attorney in charge of the original prosecution, (c) the judge who sentenced petitioner, (d) and the three Deputy Marshals on whose testimony petitioner relied; despite the fact petitioner called every witness he desired to call; despite the fact petitioner was provided with transcripts of proceedings at the time of sentence and at the time of the hearing of the motion to reduce sentence, still petitioner produced *no evidence* that the alleged promise of a ten year sentence had been made him. The court below so found, and the majority agree.

But, state the majority, a chance remark by the trial judge, made on the motion to reduce sentence, raises several questions. They first "assume" that the Assistant United States Attorney knew

in advance of the trial date who the sentencing judge was to be; they think it "unlikely" that an Assistant United States Attorney would be unaware of a judge's practice in respect to asking of recommendations as to length of sentence; and based on these "facts" state it is "possible" there existed an illusory agreement on the part of the Assistant United States Attorney. This constitutes the "deceit" by which the majority invoke Walker v. Johnston, 1941, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 and if the "promise" (found not to exist) was not intended to be kept (the evidence was that the Assistant United States Attorney did precisely what he stated he would do) then the majority rely on violation of due process, and the cases cited in note 15. Thus the majority are back to an alleged lack of due process, which they originally state they do not rely upon.

Appellant's general contention is that his plea of guilty was obtained by promises and false representations made by appellee to the effect that if he pleaded guilty, he would receive a sentence not to exceed ten years. The record does not substantiate this contention. The testimony of all witnesses (including counsel who represented appellant when he pleaded guilty and when he was sentenced, as well as counsel for appellant's codefendant) shows that the Assistant United States Attorney had *not* promised that he would recommend to the district court that a sentence not to exceed ten years should be imposed; only that he would, if asked, suggest ten years was satisfactory to the government. There was evidence appellant was told repeatedly and pointedly that appellee could not guarantee that the district court would ask for appellee's recommendation. The record shows that appellant did not enter a plea of guilty in reliance on any promises made by appellee. Malone v. United States, 10 Cir. 1961, 295 F.2d 77. See also, Trimier v. United States, 8 Cir. 1961, 295 F.2d 237.[1] The fact that an accused who pleads guilty receives a sentence more severe than he anticipated is not a ground for vacating or reducing the sentence. Verdon v. United States, 8 Cir. 1961, 296 F.2d 549.

The district court, in the proceeding on a motion to vacate sentence, did not err in determining that there was no coercion on the part of appellee to extract a plea of guilty from appellant. Williams v. United States, 9 Cir. 1961, 296 F.2d 216. See also, United States v. Jacek, 3 Cir. 1962, 298 F.2d 429.

The district court should not accept a plea of guilty without first determining that it is made voluntarily with an understanding of the nature of the charge and without promises made by the prosecution. Adkins v. United States, 8 Cir. 1962, 298 F.2d 842. See also, United States v. McNicholas, 4 Cir. 1962, 298 F.2d 914. This determination was made by the court below. Since in my judgment appellant has not substantiated his allegations of fact with any evidence, convincing or otherwise, the order entered by the district court was no abuse of discretion and should be affirmed. Cf.: Malone v. United States, 6 Cir. 1962, 299 F.2d 254, and Adkins v. United States, supra.

Appellant concedes that there is no constitutional right to representation by counsel in a proceeding instituted pursuant to Section 2255; he acknowledges that such a proceeding is civil rather than criminal. Brown v. Johnston, 9 Cir. 1937, 91 F.2d 370; Dorsey v. Gill, 1945, 80 U.S.App.D.C. 9, 148 F.2d 857. Consequently, whether or not counsel should be appointed in a Section 2255 proceeding rests within the sound discretion of the district court. Richardson v. United States, 10 Cir. 1952, 199 F.2d 333; see also, Clatterbuck v. United States, 1959,

1. Where it is said that representations made to an accused by a Deputy Marshal and his court appointed counsel that he would not be sentenced to more than three years for an alleged offense did not constitute a legal taking of advantage or processive unfairness against the accused and did not require that his conviction and five year sentence be set aside.

105 U.S.App.D.C. 295, 266 F.2d 893; Tubbs v. United States, 10 Cir. 1957, 249 F.2d 37; Vinson v. United States, 6 Cir. 1956, 235 F.2d 120.

The desirability of appointing counsel in these proceedings has, however, been recognized where complex issues of fact are involved. United States ex rel Wissenfeld v. Wilkins, 2 Cir. 1960, 281 F.2d 707. Carnley v. Cochran, 1962, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. Appellant contends that the factual issues here involved were so complex that being without the aid of appointed counsel reduced his hearing to an ex parte proceeding. No fair reader of the transcript of the proceedings had below could characterize it as such.

Because I cannot agree with the majority on the issue they rule controlling (and I do not), I am required to consider, as the majority had no need to do, the remaining points raised by petitioner.

### WAS IT ERROR FOR THE DISTRICT COURT JUDGE TO TAKE THE STAND?

In the course of the hearing below, appellant called the sentencing judge—who also presided at the hearing on the instant motion—as a witness. The calling of the judge who sentenced appellant and who was presiding over the hearing on appellant's motion was, contends appellant, proper; citing Davis v. United States, 8 Cir. 1954, 210 F.2d 118, as authority. It is not in point; and does not so hold. But, urges appellant, it was error for the judge, once called (and to whom appellant contends he addressed a proper question[2] which required an answer) to perform the dual function of witness and judge, as he was when he sustained appellee's objection to the question addressed to him by appellant.

Appellant also relies on the cases, *inter alia,* of In re Murchison, 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942, and United States v. Halley, 2 Cir. 1957, 240 F. 2d 418. In the Murchison case the Su-

preme Court said that where a judge himself may be a material witness, he should not sit as *trial* judge; United States v. Halley is to the same effect.

Perhaps, if appellant had given the judge notice that he intended to call him as a witness, more desirable arrangements could have been made. But the historical purpose of the passage of Section 2255 was to permit the same judge who had sentenced the prisoner to pass on any petition alleging irregularity in that sentencing. Any error that could be attached to the trial judge acting both as presiding judge and witness could not have been prejudicial, particularly here where but one question was asked of the judge, and none answered.

### WAS APPELLANT ENTITLED TO SEE THE PRESENTENCE INVESTIGATION REPORT?

Appellant contends, however, that production and admission of the presentence investigation report would have provided good evidence of whether he was or was not made the alleged promise by appellee. In appellant's own words:

"In the instant case the government attorney made certain promises as to the sentence and these promises were contingent upon a presentence investigation report being made. As the report was made it was important to the allegation from the standpoint that a recommendation of 10 years was made or that either no recommendation was made or one for a harsh sentence. If the recommendation for 10 years was made substance could be credited to the appellant's allegation of a promise. On the other hand, if no recommendation as to the sentence was made or one for a severe sentence, then either the government attorney made misrepresentations to the appellant or the appellant's allegations are completely false."

**2.** "Judge East, in a presentence report in the case of United States v. Dillon, were you given the impression of any maxi-

mum sentence reflected from the District [sic, United States] Attorney's Office?"

But, here, the fact that there was no "promise" as alleged by appellant was conclusively established. Appellant's entire argument on this third point is premised upon his conclusion that the alleged "promise" was made. Regardless of what the presentence investigation report may show, it was the recommendation of the probation officer, and could not impeach any witness who testified on this hearing. If a recommendation for a light sentence was contained in the report, it would only substantiate the fact that appellant was not misled and that the United States Attorney did just as he testified in the instant hearing. If a request for a maximum sentence was contained in the report, it still would not impeach the United States Attorney's testimony at the instant hearing, viz, that government counsel would recommend a light sentence only if his recommendation was asked for by the court during sentencing.

But in any event, appellant's contentions were answered by the tenth circuit in the case of Hoover v. United States, 10 Cir. 1959, 268 F.2d 787, where the court held, at page 790, that use of the ex parte report was not violative of due process.

Though there may be a divergence of opinion concerning the propriety of the disclosure of presentence investigation reports after a plea or verdict of guilty has been entered, the better view seems to be that expressed in United States v. Durham,[3] D.C. 1960, 181 F.Supp. 503 certiorari denied, 364 U.S. 854, 81 S.Ct. 83, 5 L.Ed.2d 77; and in United States v. Greathouse,[4] D.C. Ala. 1960, 188 F. Supp. 765, and in Hoover v. United States, supra. And see Williams v. New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

Appellant's reliance upon Section 3500 of Title 18 United States Code, is misplaced. The purpose of Section 3500 is not that which appellant here contends. Campbell v. United States, 1 Cir. 1961, 296 F.2d 527.

Finding no error, I would affirm.

3. "The defendant moves for an opportunity to inspect the Probation Officer's report of the presentence investigation. This motion is denied.

"It is not the practice to permit the defendant or his counsel or anyone else to inspect reports of presentence investigations. Such reports are treated as confidential documents. They are not public records. The reason is obvious. Such reports, in order to be helpful to the Court, must of necessity contain a considerable amount of information that may be obtained, on occasion, in confidence. So, too, the Probation Officer must feel free to make comments and suggestions that may prove to be of value to the Court.

"Rules of evidence are not applicable to the imposition of sentence. In fact, it has been the traditional practice, even before the system of presentence investigations was introduced, for the Court to receive information in confidence which the Court might or might not disclose to the defense, as the Court saw fit, that might bear upon the question of what sentence should be imposed. The custom of treating reports as confidential documents is merely a continuation of the prior practice. If these reports were made public and were available to counsel as a matter of right, I am sure that their value would be much reduced, because a great deal of information now generally contained in them would not be available." (181 F.Supp. at 503–504.)

4. "This Court is of the opinion that the motion of the United States to quash the subpoena duces tecum directed to James Elmo Turner, Chief U. S. Probation Officer for this district, should be granted. To permit the probation officer to be subpoenaed and to produce a pre-sentence report for use by a defendant would, in the opinion of this Court, seriously hamper and handicap the probation investigation system in this district. When the probation officer makes the investigation that forms the basis for a presentence report, he is acting as an arm of the Court and as an investigator for the Judge of the Court. The presentence report is not a public record; it is a confidential report for the use by the Judge of the Court in his effort to determine what a fair sentence should be." (188 F.Supp. at 766.)